**Patricia WILLIAMS, Plaintiff,**

v.

**Edward LOPES and Sergeant Brunelli, Defendants.**

**No. 3:96 CV 2505(GLG).**

United States District Court, D. Connecticut.

Aug. 16, 1999.

John R. Williams, Williams, Polan & Pattis, New Haven, CT, for plaintiff.

Marcia Gleeson, Sack, Spector & Barrett, West Hartford, CT, for defendants.

## OPINION

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 56, defendants move for summary judgment. For the reasons discussed below, defendants' motion is GRANTED.

## BACKGROUND

The facts set forth in defendants' Local Rule 9(c)1 Statement are largely uncontested. They are as follows (exhibit numbers are those attached to moving papers):

1. On August 12, 1996, Danbury police officers Edward Lopes and J. Dinho responded to plaintiff's residence at 157 Shelter Rock Road, Danbury, Connecticut in response to plaintiff's report of a harassment complaint. Plaintiff and her two year old daughter lived alone at 157 Shelter Rock Road in Danbury, Connecticut. Plaintiff's complaint, para. 7, *Exhibit 1*.

2. Upon the officers' arrival, they were met by the plaintiff who informed the officers that she believed a neighbor's child had thrown a knife at her and her two year old daughter. Plaintiff was unable to describe the knife. *Exhibit 1, Exhibit 2, pp. 84–86*.

3. In addition to the allegation about a knife being thrown at her, the plaintiff told the officers that over a two year period of time, there were electromagnetic fields within her house that caused her clocks to spin and her batteries to go dead. Plaintiff also told the officers that someone was pouring fleas and other bugs into her chimney. Additionally, plaintiff claimed that people were spying on her and trying to harm her. She also claimed that someone threw a cinder block through her windshield. When the officers checked, they saw no damage to the car. Plaintiff also claimed that she had been involved in a car accident during a snowstorm that occurred in July. *Exhibit 1, Exhibit 2, pp. 99–105, 114–115*.

4. During the course of their investigation, the officers spoke with Cheryl Laro, the mother of the six year old boy who allegedly threw a knife at the plaintiff. Ms. Laro told the police that her children were playing with plastic "Little Tykes®" utensils and a plastic knife fell to the ground from her condominium balcony which is located approximately

fifteen feet above the driveway. Ms. Laro told the officers that the plaintiff accused her of trying to kill the plaintiff. *Exhibit 3.*

5. Based on plaintiff's accusations and her mental demeanor, the officers were concerned about plaintiff's mental state and her ability to care for her two year old child. *Exhibit 1.*

6. Sergeant Brunelli arrived at the scene and was advised as to the incident and the concerns that the officers had about plaintiff's mental state. *Exhibit 1.*

7. Officers Lopes and Dinho went to the Danbury Hospital Psychiatric Emergency Service Crisis Intervention Unit and advised the Crisis Intervention personnel about plaintiff's behavior. *Exhibit 1.*

8. In addition to the officers' concern about plaintiff's mental state, a staff nurse at the Danbury Hospital Psychiatric Evaluation [sic?] Service Crisis Intervention Unit issued an emergency notice to the police requesting that they transport plaintiff to the Emergency Room for an emergency psychiatric evaluation. *Exhibits 1 & 4.*

9. Officers Lopes and Dinho returned to plaintiff's residence and attempted to transport plaintiff to the hospital for an emergency evaluation. *Exhibit 1.*

. . .

11. Eventually, plaintiff was subdued and transported to Danbury Hospital Emergency Unit for a psychiatric evaluation.

12. Plaintiff's two year old daughter was left with plaintiff's neighbor, Ms. Jean Smith, a registered nurse. *Exhibit 1, Exhibit 2, pp. 228–230.*

13. At no time was plaintiff arrested or charged with any type of crime. Plaintiff was not being held at the Danbury Hospital by the Danbury Police. *Exhibit 2, p. 244.*

14. The Danbury Emergency Department reports indicate the following diag-

nosis/conclusions concerning the plaintiff:

a. Plaintiff showed paranoid [ideation] and delusional thinking and was found to be paranoid. The treating physician believed that the plaintiff was mentally ill and in need of immediate care and treatment in a hospital for mental illness. *Exhibit 5.*

b. Plaintiff's comments had no bearing on the doctor's questioning, and they felt that plaintiff was unable to focus on what they were saying. Plaintiff was kept under security watch. Plaintiff was medically cleared for further crisis intervention, and she was admitted to the psychiatric service. The doctors ordered further work-up and comments as well as evaluation of the plaintiff per crisis intervention. *Exhibit 6.*

c. Plaintiff's judgment was impaired. She had ideas of reference. She heard voices on television and felt that they were looking at her from the television. She was paranoid, had delusions and hallucinations. *Exhibit 7.*

15. Despite plaintiff's claims in her lawsuit that she was beat about the head with a pistol and blunt object, the Danbury Hospital Emergency reports indicate that plaintiff was given a very careful examination of the patient's head, particularly the scalp in the area where she said she had been hit with a pistol. Despite plaintiff's claims of an assault, plaintiff had no injuries. *Exhibit 2, pp. 120–130, Exhibit 6.*

16. In addition, in response to defendants' discovery requests concerning the nature and extent of any physical injuries, plaintiff indicated there were none. Plaintiff was involuntary [sic] committed to the Danbury Hospital Psychiatric Ward. Plaintiff was hospitalized for ten days at the Danbury Hospital Psychiatric Ward. During her stay in the Danbury Hospital Psychiatric Ward, plaintiff was found to be clinically incompetent and the doctors were so concerned about

her condition deteriorating that she was medicated against her will. On August 22, 1996, plaintiff was discharged from Danbury Hospital Psychiatric Ward. *Exhibit 2, p. 254, Exhibits 10 & 12.*

17. After plaintiff was sent to Danbury Hospital, the officers returned to plaintiff's residence to locate a telephone number to call plaintiff's other family members to care for plaintiff's two year old daughter. *Exhibits 1 & 9.*

18. These defendants caused no damage to plaintiff's condominium when they returned to the condominium to locate plaintiff's family members and to get a child car seat to transport plaintiff's two year old daughter. *Exhibit 2, pp. 186, 188.*

19. Despite plaintiff's deposition testimony and interrogatory responses that she has never had psychiatric problems, plaintiff had a history of psychiatric problems, had previously called the Danbury Hospital Crisis Intervention Hotline, and had been a complainant to the Danbury Police Department about suspicious activity. *Exhibit 2, pp. 259–261 & Exhibit 11.*

20. Connecticut General Statutes § 17a–503 allows that police officers, who have reasonable cause to believe a person has psychiatric [disabilities] and [is] dangerous [to herself] and in need of immediate treatment, may take that person into custody and transport him/her to a general hospital for an emergency examination.

Plaintiff does dispute defendants' claim that she began to physically resist and fought the officers' efforts to get her into the ambulance. Defs.' Local R. 9(c)1 Stmt. ¶ 10. We note that this fact standing alone is not particularly material, but it does relate to the issue of whether excessive force was used. This will be discussed separately. With respect to defendants' allegations in paragraphs 17 and 18 concerning the officers' return to plaintiff's residence and the reasons therefore, plaintiff maintains that they entered without a warrant (which is admitted by defendants) and that they "have not offered any explanation, justification or excuse for failing to obtain a search warrant before entering the plaintiff's condominium the second time." Pl.'s Local R. 9(c)2 Stmt. ¶¶ 3 & 5.

### DISCUSSION

Plaintiff contends that the purported unlawful re-entry is "the central issue in this case." Pl.'s Mem. at 1. The second issue, according to plaintiff, is the alleged use of excessive force. The complaint also raises a number of claims with respect to the transportation of plaintiff to Danbury Hospital and her retention there. We construe this as a claim under the Fourteenth Amendment's due process clause or under the Fourth Amendment's prohibition against unreasonable seizures. Finally, plaintiff alleges several state-law causes of action, including intentional infliction of emotional distress, assault and battery, and false imprisonment.

### I. UNLAWFUL SEIZURE OF PLAINTIFF'S PERSON

Although the complaint raises claims under the Fourth and Fourteenth Amendments based on the transportation of plaintiff to Danbury Hospital and her commitment there, it is apparent from the opposition papers that these claims are not being pursued. *See* Pl.'s Mem. at 4. Nevertheless, we find that defendants are entitled to qualified immunity on any such claims.

In a section 1983 case, a municipal officer performing discretionary functions may be shielded from liability in his individual capacity based on qualified immunity. *Shechter v. Comptroller of New York,* 79 F.3d 265, 268–69 (2d Cir.1996); *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Assuming this case involves clearly established rights, the entitlement to qualified immunity generally turns on the particular facts of a case. *Robison v. Via,* 821 F.2d

913, 921 (2d Cir.1987). Where the factual record is not in serious dispute, as is the situation here, it is preferable for a court to decide the qualified immunity issue at the pretrial stage. *Warren v. Dwyer,* 906 F.2d 70, 76 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990); *see Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992) (discussing the Supreme Court's approval of the use of summary judgment on a qualified immunity claim).

▪ The entitlement to qualified immunity does not depend on the lawfulness of an officer's actions, but on whether it was objectively reasonable for the officer to believe he acted in accordance with existing law. *Anderson v. Creighton,* 483 U.S. 635, 644, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, defendants must show that the facts alleged in the complaint are such that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, [plaintiff] could conclude that it was objectively unreasonable for [defendants] to believe that [they were] acting in a fashion that did not clearly violate an established federally protected right." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995)· (citations and internal quotations omitted). Generally, an officer's actions are considered objectively unreasonable "when no officer of reasonable competence could have made the same choice in similar circumstances." *Id.* at 420–21.

▪ In the context of an involuntary commitment, the Second Circuit has applied the qualified immunity defense to a claim under the Due Process Clause of the Fourteenth Amendment. *Glass v. Mayas,* 984 F.2d 55, 57–58 (2d Cir.1993); *see Rodriguez v. City of New York,* 72 F.3d 1051, 1061 (2d Cir.1995) (stating that an "involuntary civil commitment is a 'massive curtailment of liberty,' and it therefore cannot permissibly be accomplished without due process of law") (quoting *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)). Under Connecticut law:

Any police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to . . . herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination under this section.

Conn.Gen.Stat. § 17a–503(a). Thus, similar to *Glass,* defendants must show that, at the time they encountered plaintiff, it was objectively reasonable for them to believe that she was dangerous to herself or others, or gravely disabled, and in need of immediate care and treatment. *See Glass,* 984 F.2d at 57 (quoting the Supreme Court as holding that "a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving in freedom or by himself or with the help of willing and responsible family members.") (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). According to an opinion of the Connecticut Attorney General on the issue of what constitutes "reasonable cause," a doctor, nurse, or mental health professional could be the source of information needed to establish reasonable cause. The opinion further states that, in any event, the decision as to whether reasonable cause exists is a discretionary function which must be exercised by the police officer. *Hospitals, Mental Health, State Police,* Op. Att'y Gen. No. 89–006 of 3/3/89, at 21, 27 (Letter to the Commissioner of the Department of Public Safety).

▪ The facts certainly demonstrate a reason to be concerned about plaintiff's mental state and her ability to care for her two-year old daughter. *See Kerman v. City of New York,* No. 96 Civ. 7685, 1999 WL 509527, at *6 (S.D.N.Y. July 19, 1999) (in an involuntary commitment case, finding that the statutory requirement of showing "serious harm to the person or others" need not be evidenced by overt acts, attempts or threats, but can be dem-

onstrated by a "refusal or inability to care for oneself"). Defendants went to plaintiff's residence on August 12, 1996 in response to a complaint plaintiff made against her neighbor. Plaintiff specifically asserted that her neighbor's six-year old child had thrown a knife at her and her two-year old daughter. Additionally, plaintiff described numerous, strange occurrences over the previous two years, such as the existence of an electromagnetic field within her house that caused her clocks to spin and her batteries to go dead, and the presence of fleas and other bugs within her house which she believes were poured down her chimney by someone within her condominium complex. Defs.' Mem.Ex. 1. She also told the officers that people were spying on her and trying to hurt her, and that someone had thrown a cinder block through her car windshield. *Id.* As mentioned earlier, plaintiff agrees with these statements. *See* Pl.'s Local R. 9(c)2 Stmt.

Defendants then related plaintiff's behavior to a staff nurse at the Danbury Hospital Psychiatric Emergency Service Crisis Intervention Unit and obtained an order to transport plaintiff to Danbury Hospital, where she was committed to the psychiatric unit for ten days. Defs.' Mem. Exs. 1 & 4. The hospital records and diagnosis establish that plaintiff had, at that time, a severe mental illness. Defs.' Mem. Exs. 5–7. Thus, we conclude that it was objectively reasonable for defendants to seize plaintiff and transport her to Danbury Hospital based on their belief that she was dangerous to herself or others, and in need of immediate care and treatment. We therefore find that defendants are entitled to qualified immunity on plaintiff's Fourteenth Amendment claim.

For the same reasons, we find that defendants are entitled to qualified immunity on plaintiff's Fourth Amendment claim. Under the Fourth Amendment, the relevant standard is also objective reasonableness. *Glass,* 984 F.2d at 58. According to the Second Circuit, the Fourth Amend-

ment "requires that an involuntary hospitalization may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard." *Id.* (citation omitted). We have already found, for Due Process purposes, that defendants had probable or reasonable cause to seize plaintiff and transport her to Danbury Hospital. Consequently, we find that defendants acted with objective reasonableness in the Fourth Amendment context, and are therefore entitled to qualified immunity.

## II. EXCESSIVE FORCE

■ To establish an excessive force claim, plaintiff must show that the force used by the officers, in light of the facts and circumstances confronting them, was unreasonable. *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990). The reasonableness of the force used must be judged from the perspective of a reasonable officer on the scene at the time, taking into consideration whether plaintiff posed an immediate threat to herself or others, and whether she was resisting the officers' efforts to bring her to the hospital. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

■ As noted earlier, plaintiff contends there is an issue of fact as to whether or not the officers used excessive force. The evidence before the Court clearly establishes that plaintiff cannot recall the events with any accuracy. Plaintiff testified that her injuries were caused by a very blunt object, which she assumed was a pistol because when she looked at one of the officers his gun was missing from its holster. *Id.* at 122–23, 125. She further testified that the officer with the missing gun was Officer Lopes. *Id.* at 123. Yet, she could not say with any certainty what it was · that hit her or who hit her. At Danbury Hospital, plaintiff was examined by Dr. Yu–Chin Rose, a female doctor, who took plaintiff's history and diagnosed

her. Defs.'s Mem.Exs. 7 & 12. When asked about Dr. Rose's finding that plaintiff's judgment was impaired, plaintiff responded that "I never spoke to a female doctor longer than thirty seconds." Williams Dep. at 244. Also at the hospital, plaintiff denied ever having been treated at any crisis intervention center, *id.* at 257, but her hospital records indicate that she was seen by the Crisis Intervention Unit in 1994. Defs.' Mem.Ex. 11. Plaintiff further denied having a psychiatric history, but the medical records refer to statements of plaintiff's mother that plaintiff has a long history of psychiatric admissions. Defs.' Mem.Exs. 7 & 12.

In contrast, plaintiff has a clear but apparently exaggerated recollection of her injuries. She claims that she was beaten about the head and the face, and that there was blood all over her hands, in her mouth, and on the couch. Williams Dep. at 122–28. She further testified that she had bruises on her arms and legs, and that she was bleeding from her arms, hands, legs, knees, and feet. *Id.* at 127, 129–30. Additionally, she contends that she was shoved to the ground, and dragged down a flight of stairs. Williams Dep. at 120, 125. She told Dr. Rose that the police manhandled her and pushed her down a flight of stairs. Defs.' Mem.Ex. 6.

On the other hand, the defendants maintain that they used only such force as was necessary to restrain her. Because of her complaints of injuries she was carefully examined by Dr. Rose at the hospital who found no evidence of trauma, recent or old, other than a few superficial skin abrasions and some mild erythema where restraints had been applied to her. *Id.* Dr. Rose particularly examined plaintiff's scalp because plaintiff said she had been hit there with a pistol. Dr. Rose found no evidence of contusions, tenderness, or abrasion. *Id.* Plaintiff seems to concede that she suffered no injuries of any permanence whatever. *See* Pl.'s Mem. at 4 (stating "[t]hat the plaintiff suffered no physical injuries as a result is irrelevant."). Indeed, in response to defendants' interrogatory asking, "If you had any bruises, marks or cuts on your body as a result of the incident alleged in your complaint, describe in detail the same and the part of your body affected," plaintiff stated, "not applicable." Defs.' Mem.Ex. 9, ¶ 5 at 2.

Trial courts are continually admonished that on a motion for summary judgment they may not weigh the evidence or determine credibility. However, it has been held that a party opposing a motion for summary judgment must provide the court with "specific facts that ... raise significant issues of credibility." *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir.1994). The converse is also true. Here we have a plaintiff whose mental state was clearly delusional. According to the emergency medical technicians who brought plaintiff to the hospital, plaintiff was absolutely out of control, incoherent, and screaming. They believed that she was having severe psychiatric problems. Defs.' Mem.Ex. 6. The doctors who examined plaintiff at the hospital agreed that she was suffering serious psychological disturbances. Defs.' Mem.Exs. 5–7 & 12. While she may now believe the accusations she makes concerning being dragged or pushed down a flight of stairs, beaten over the head with a pistol, and assaulted so that she was bleeding from most parts of her body, her recollections simply are not credible. Just as she perceived a number of the other external stimuli which did not in fact exist, so she apparently now has no accurate recollection of what occurred. While there is ostensibly a material issue of fact, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, we find that defendants are entitled to summary judgment on the excessive force claim, because we find that plaintiff cannot establish, as a

matter of law, that defendants used an unreasonable amount of force.

■ At a minimum, we find defendants are entitled to qualified immunity on the excessive force claim. *See Lennon,* 66 F.3d at 425–26 (granting summary judgment to police officers on qualified immunity grounds on a plaintiff's section 1983 excessive force claim because, under the circumstances, the court found that "no rational jury could have found that the force used was so excessive that no reasonable officer would have made the same choice"); *see also Finnegan,* 915 F.2d at 822–23 (concluding that the qualified immunity defense is generally available against excessive force claims); *Slattery v. Rizzo,* 939 F.2d 213, 215–16 (4th Cir.1991) (sitting by designation, Justice Powell noted that besides the Sixth Circuit, "all other courts of appeals that have addressed this issue directly have held that qualified immunity" is available on excessive force claims). To the extent any force was used in defendants' efforts to transport plaintiff to the hospital, we conclude that reasonable officers would have believed that the amount of force which defendants used was objectively reasonable.

## III. UNLAWFUL RE–ENTRY

■ Next, plaintiff argues that defendants violated her Fourth Amendment rights by entering her condominium and conducting a warrantless search after she and her daughter had been removed from the premises. We find, however, that defendants are entitled to qualified immunity. At the outset, we note that this case differs from a warrantless entry or search of a suspected criminal's premises. *See State v. Blades,* 225 Conn. 609, 619, 626 A.2d 273, 278 (1993) (noting that the emergency exception derives from the police's community caretaking function rather than its criminal investigatory function). Under the emergency exception to the warrant requirement, police officers may enter a person's home to render emergency aid to a person they reasonably believe needs

assistance. *Tierney v. Davidson,* 133 F.3d 189, 196 (2d Cir.1998). Accordingly, in situations such as ours, the probable cause standard does not apply. As one Connecticut court succinctly stated:

> there is a significant difference between a police entry for the purpose of making an arrest or searching for evidence incident to a criminal investigation and an entry for the purpose of rendering aid or saving a human life. Although probable cause is the standard by which we judge the former situation, reasonable belief determines the latter.

*State v. Klauss,* 19 Conn.App. 296, 301, 562 A.2d 558, 561 (1989) (citing *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). It is an objective determination, and thus, the issue is whether reasonable officers would have believed an emergency existed based on the facts known at the time of entry.

Based on our review of the evidence, we find defendants reasonably believed that they needed to return to plaintiff's condominium to retrieve a child car seat and to obtain information about plaintiff's relatives in order to ensure the safety of plaintiff's daughter. According to the police incident report, plaintiff's neighbor, Ms. Jean Smith, brought the child to the Crisis Intervention Unit. Hospital employees then asked Smith to return with the child to her own home and babysit her there until plaintiff's evaluation was complete and/or until family or friends could be located. Smith agreed, and Officer Dinho accompanied her to plaintiff's residence in order to pick up items necessary to temporarily care for the child, and to get information on plaintiff's family in order to arrange for extended care of the child. Defs.' Mem.Ex. 1.

Plaintiff's rather *pro forma* opposition to this motion stresses the impropriety of granting summary judgment where there are material facts in dispute. We find, however, there are no material facts in dispute regarding the second entry into plaintiff's condominium. It is purely a

question of law, and we conclude that reasonable officers would have believed that defendants' actions were taken to provide plaintiff's daughter with necessary and immediate attention.

Plaintiff relies on two cases, the first of which is *Caruso v. Forslund,* 47 F.3d 27 (2d Cir.1995). In that case, a detective was approached by a woman who claimed that her child had been abducted from Maine and that she believed the child was in the community. She did not have a court order establishing her custody nor did she file a criminal complaint as to the abductor. She did have a birth certificate establishing that she was the mother of the child. She told the officer that the father was someone different from the name appearing on the birth certificate and she believed he had the child. She gave the officer a list of the names and addresses of that person's family members. After determining that there was an all points bulletin out for the missing child believed to be taken by the person identified as the father, the detective and other officer entered the house of a member of the family of the purported kidnapper. The abductor was not in the house. The defendants and others with them were repeatedly requested to leave. They nevertheless searched the house and found the child. Since the defendants were conducting a criminal investigation for which no arrest or search warrant had been obtained, the jury found for the relative whose house had been invaded but awarded her no compensatory damages. The Court of Appeals upheld this judgment finding that the defendants could not meet the heavy burden under Fed.R.Civ.P. 50 for judgment as a matter of law. The facts of that case are far different from the actions of these defendants who were trying to assist plaintiff and her family.

Plaintiff also relies on *Fontenot v. Cormier,* 56 F.3d 669 (5th Cir.1995). The defendants were looking for a criminal suspect and went to his girlfriend's house, where he was believed to be residing. The defendants surrounded the house and pointed their weapons at the girlfriend. The criminal suspect was not in the house but arrived shortly thereafter by car outside in the street. This too involved a criminal investigation and an intrusion into a non-suspect's house with weapons drawn. It does not support plaintiff's claims in this case.

Consequently, we find defendants are entitled to qualified immunity on plaintiff's Fourth Amendment claim regarding the re-entry into her residence.

## IV. STATE–LAW CLAIMS

To the extent plaintiff has not dropped her state-law claims, we address the allegations of intentional infliction of emotional distress, assault and battery, and false imprisonment. We find that each of these claims is without merit.

■ With respect to plaintiff's claim for intentional infliction of emotional distress, we find as a matter of law that plaintiff cannot show that defendants' conduct was extreme and outrageous. *See Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337, 1342 (1986) (setting forth the elements of an intentional infliction of emotional distress claim). As discussed before, plaintiff has not alleged any specific, credible facts to defeat defendants' summary judgment motion. Plaintiff's numerous statements regarding the physical abuse inflicted by defendants is belied by her lack of injuries. Moreover, we previously found that defendants were privileged in taking plaintiff to Danbury Hospital. Thus, we grant summary judgment to defendants on the intentional infliction of emotional distress claim.

■ To establish a claim of false imprisonment, plaintiff must show that her physical liberty was restrained by defendants and that she was held against her will. *Berry v. Loiseau,* 223 Conn. 786, 820, 614 A.2d 414, 432 (1992). Plaintiff's claim for false imprisonment will not survive if defendants can establish the existence of

probable cause for the confinement. *Kerman*, 1999 WL 509527, at *9. As we have previously found that defendants had probable cause to seize plaintiff, transport her to Danbury Hospital, and treat her there, we thus conclude that defendants had probable cause for purposes of the false imprisonment claim. *See id.* at *9 (granting summary judgment in favor of police officers on a false imprisonment claim, because the court had already found that the defendants had a reasonable belief that probable cause existed to take the plaintiff into custody for a psychiatric evaluation); *Rivera v. Granucci*, Civ. No. N–87–480, 1993 WL 76202, at *9 (D.Conn. Mar.12, 1993) (having granted summary judgment to the defendants on the plaintiff's false arrest claim, because the court found that there was probable cause for the arrest, the court also granted summary judgment on the plaintiff's false imprisonment claim on the basis of qualified immunity). Accordingly, we grant summary judgment to defendants on this claim.

■ Finally, plaintiff's assault and battery claim must fail for the same reasons plaintiff could not succeed on her excessive force claim. To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to her and that the application of force or violence was unlawful. *Moriarty v. Lippe*, 162 Conn. 371, 389, 294 A.2d 326, 335 (1972). As discussed earlier, we find that defendants did not use an unreasonable amount of force. Thus, we grant summary judgment to defendants on this claim.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (**Doc. No. 33**) is **GRANTED** in all respects. The Clerk will enter judgment for defendants.

**SO ORDERED.**