**Zhasmen RZAYEVA, Plaintiff,**

v.

**Edward FOSTER, Mary Hazen and The City of Hartford, Defendants.**

**No. 3:97CV01385AWT.**

United States District Court, D. Connecticut.

Feb. 26, 2001.

Zhasmen Georgievna Rzayeva, Hartford, CT, pro se.

Jasmin Rzayeva, Hartford, CT, pro se.

Jeffrey G. Schwartz, Law Offices of Scott B. Clendaniel, Hartford, CT, for Edward Foster, Mary Hazen, City of Hartford.

Jeffrey C. Pingpank, Cooney, Scully & Dowling, Hartford, CT, for Catholic Family Services.

## RULING ON SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

THOMPSON, District Judge.

The plaintiff, Zhasmen Rzayeva, proceeding *pro se* and *in forma pauperis,* brings this action against the City of Hartford and two of its police officers. The plaintiff makes various First, Fourth and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983, as well as pendent state law claims, and the defendants have moved for summary judgment. For the reasons set forth below, the defendants' motion for summary judgment is being granted in part and denied in part. The sole claim remaining is the plaintiff's claim, as to defendant Edward Foster, that her Fourth and Fourteenth Amendment rights were violated because of a warrantless entry into her home.

## I. *FACTUAL BACKGROUND*

Zhasmen (now Jasmin) Georgievna Rzayeva emigrated to Hartford, Connecticut from Russia in 1993 with her husband and mother. The plaintiff became a citizen of the United States on July 2, 1999. Based on a review of her written and tape recorded submissions in this case, the plaintiff appears to have slightly limited, albeit functional, English proficiency.

The facts of this case flow out of a dispute between the plaintiff and Anthony Santos. In late 1995, Mr. Santos was introduced to the plaintiff by Felix Melkoumian, the plaintiff's cousin, who became a friend to Mr. Santos and would later work for Mr. Santos' construction firm. The plaintiff's family and Mr. Santos became

very friendly over the following weeks. On at least one occasion, Mr. Santos had dinner with the plaintiff and her family at the plaintiff's home.

The plaintiff alleges that Mr. Santos, who was also a law school student at that time, involved himself in a lawsuit the plaintiff was attempting to initiate against Catholic Charities. The plaintiff contends that Mr. Santos, after speaking with employees at Catholic Charities, convinced Mr. Melkoumian not to finance the plaintiff's lawsuit as he had originally promised to do. The plaintiff also claims that, on January 22, 1996, while Mr. Santos and the plaintiff were alone in her apartment, Mr. Santos "sexually harassed [her] by indecent exposure." [1]

Further events occurred between the plaintiff and Mr. Santos leading the plaintiff, on November 10, 1996, to leave a note on Mr. Santos' car informing him that if he did not refrain from certain activities, the plaintiff would begin a hunger strike. The note further stated that the plaintiff would notify her doctor, the police and Mr. Santos' law school of the hunger strike. In response to the note, Mr. Santos complained to the Hartford Police Department.

On November 11, 1996, a Hartford Police Department dispatcher ordered Officer Edward Foster to look into the matter. Officer Foster first went to Mr. Santos' apartment, where Mr. Santos showed the officer the note written by the plaintiff. Mr. Santos informed Officer Foster of the plaintiff's address and Officer Foster went to see the plaintiff.

Officer Foster apparently arrived at the plaintiff's home at about 10:00 p.m. on the evening of November 11, 1996. The plaintiff contends that after she answered her door, the officer, without permission and without a warrant, entered her apartment. Once Officer Foster explained the purpose of his visit, the plaintiff became quite upset. She asserts that Officer Foster stated that she would be arrested if she continued to harass Mr. Santos and that, because she was an immigrant, she had no rights in this country. The plaintiff further asserts that Officer Foster refused to investigate her complaint that Mr. Santos had sexually harassed her and that the basis of this refusal to investigate was the fact that the plaintiff was an immigrant from Russia.

The plaintiff claims that, after some further discussion, she was concerned that Officer Foster might not be a real police officer or that he might have come as a friend of Mr. Santos rather than on official police business, and she asked Officer Foster to leave her apartment. She states that Officer Foster then argued with her, harassed her and humiliated her. When the officer did not leave, the plaintiff threatened to kill herself by cutting her wrists. [2] The plaintiff also threatened to jump out the third floor window and made throat slashing gestures. Concerned for the well-being of the plaintiff, and perhaps others, Officer Foster, acting pursuant to Conn.Gen.Stat. 17a–503, called an ambulance, placed the plaintiff in custody, and had her taken to St. Francis Hospital for an emergency mental health examination.

---

1. Mr. Santos claims that he had no intention to harass the plaintiff but was actually trying to show the plaintiff what type of underwear her cousin, Mr. Melkoumian, should wear to a construction site. Regardless, Mr. Santos is not a defendant in this case and thus the issue is not before the court.

2. The plaintiff claims that in Russia, when the police enter a home without permission, the homeowner will sometimes threaten to cut his or her veins as a sign of protest, thereby forcing the police, who would not want to be associated with the homeowner's death, to leave.

The plaintiff was evaluated at St. Francis that evening. The hospital's evaluation states as follows: "The [patient] is alert and oriented. . . . She denies being suicidal or homicidal and does not appear to be delusional. Mood is euthymic, [patient] states that Mr. Santos called police to punish her. Insight is good, judgment and impulse control appear good." The plaintiff was diagnosed by the hospital as having "adjustment disorder with mixed disturbance of conduct and emotions." After being "medically cleared," the plaintiff was released from the hospital the next morning and given the number of the outpatient mental health clinic for purposes of follow up visits.

Once she was released from the hospital, the plaintiff wrote to the Chief of the Hartford Police Department to complain about Officer Foster's actions. After receiving no reply,[3] she filed a citizen complaint with the Internal Affairs Division (the "IAD"). Eventually, Sergeant Mary Hazen, an IAD investigator, was assigned to interview the plaintiff and investigate her complaint.

Sergeant Hazen met with the plaintiff on several occasions. The sergeant informed the plaintiff that her complaint regarding Officer Foster had been investigated and that no cause existed to pursue the matter further. The investigation conducted by IAD found, based on the facts that the plaintiff herself admitted, that Officer Foster was justified in his course of action.

The plaintiff claims that during at least one of their meetings, Sergeant Hazen threatened the plaintiff that the sergeant would make sure the plaintiff failed the citizenship test—which would in turn result in the loss of the plaintiff's SSI benefits—if the plaintiff persisted in her complaints.

Sergeant Hazen recounts these events differently. She claims that she informed the plaintiff that her role as an IAD investigator was to investigate complaints against the department and that the plaintiff would be better off concentrating on passing the citizenship exam than worrying about Mr. Santos. The sergeant claims that the plaintiff became upset upon hearing this and asked whether the sergeant was threatening her. Sergeant Hazen states that she replied that she was not threatening the plaintiff, that she had nothing to do with immigration and naturalization and that she was just trying to give the plaintiff some helpful advice.

Following these events, on May 5, 1997, the plaintiff filed a claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). In her CHRO complaint, the plaintiff asserts basically the same facts asserted by her as set forth above. On July 3, 1997, while the CHRO complaint was still pending, the plaintiff filed a motion to proceed *in forma pauperis* in this court. On July 15, 1997, that motion was granted and her complaint was docketed.

On July 21, 1997, the plaintiff, claiming that the CHRO had made numerous errors in the handling of her case, wrote to the CHRO that she did "not want the Commission to participate in [her] case" and that she had instead "applied to the Federal Court." The CHRO apparently did not understand the plaintiff's July 21 letter as a request for the dismissal of her case because, on August 5, 1997, the CHRO

---

3. According to the defendants, the plaintiff's letter asked whether, if she were to go to Mr. Santos's law school and speak with his professors, she would be arrested. Because, according to the defendants, the Chief of Police cannot make that type of representation, the Chief did not respond to the letter.

issued a notice of dismissal based on the merits of the plaintiff's case. The CHRO determined that "[t]here is no reasonable possibility that further investigation of [the] complaint will result in a finding of reasonable cause."

On September 12, 1997, the plaintiff filed an amended complaint. The amended complaint lists as defendants the City of Hartford, Officer Edward Foster in his individual and official capacities and Sergeant Mary Hazen in her official capacity. The complaint does not specifically or clearly enunciate the claims against these defendants. Since the plaintiff is a *pro se* litigant, the court reads the pleadings and memoranda filed by the plaintiff liberally and interprets them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). Therefore, the court assumes that the following claims are contemplated by the plaintiff's complaint: 1) Officer Foster violated the plaintiff's Fourth and Fourteenth Amendment rights by entering her apartment without permission or a warrant and in the absence of exigent circumstances; 2) Officer Foster and the City of Hartford violated the plaintiff's liberty interests under the Due Process Clause of the Fourteenth Amendment by forcing the plaintiff to involuntarily submit to a mental examination; 3) Officer Foster and the City of Hartford violated the plaintiff's Fourth and Fourteenth Amendment rights by seizing the plaintiff's person and forcing her to submit to a mental examination; 4) Officer Foster and the City of Hartford violated the plaintiff's Equal Protection rights by refusing, on account of her alienage, to investigate the plaintiff's claims of sexual harassment; 5) Sergeant Hazen and the City of Hartford violated the plaintiff's First Amendment rights by retaliating against her for filing a citizen complaint; 6) Sergeant Hazen and the City of Hartford violated the plaintiff's First and Fourteenth Amendment rights to petition the government for redress of grievances by threatening to harm the plaintiff's chances of becoming a citizen; 7) Sergeant Hazen and the City of Hartford violated the plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment by treating her differently on account of her alienage; 8) Officer Foster and Sergeant Hazen intentionally caused the plaintiff emotional distress; and 9) Officer Foster and Sergeant Hazen negligently caused the plaintiff emotional distress. The plaintiff seeks relief in the form of monetary damages and a letter of apology.

The court granted in part, and denied in part, the defendant's motion for summary judgment, giving the defendant leave to file a supplemental motion for summary judgment ("Supp.Motion"). The original motion for summary judgment was granted with respect to the plaintiff's claims that Officer Foster, in his individual capacity, violated the plaintiff's liberty interests under the Due Process Clause of the Fourteenth Amendment by forcing the plaintiff to involuntarily submit to a mental examination and that Officer Foster, in his individual capacity, violated the plaintiff's Fourth and Fourteenth Amendment rights by seizing the plaintiff's person and forcing her to submit to a mental examination. The original motion for summary judgment was also granted with respect to all claims arising out of the threats alleged to have been made by Sergeant Hazen. Summary judgment was denied without prejudice as to all other claims made in the complaint, as the court has construed it.

## II. *LEGAL STANDARD*

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to

which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 58 (2d Cir.1987); *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d. Cir.1990) (quoting *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 12 (2d Cir.1986)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for

the nonmovant. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in her pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. If the movant demonstrates an absence of material issues of fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than 'some metaphysical doubt as to the material facts, . . . [and] must come forward with "specific facts showing that there is a genuine issue for trial." ' " *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993) (citations and emphasis omitted). If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. *See Anderson,* 477 U.S. at 248, 251, 106 S.Ct. 2505.

█ Because the plaintiff in this case is proceeding *pro se,* the court must read the plaintiff's pleadings and other memoranda liberally and construe them in a manner most favorable to the plaintiff. *See Burgos,* 14 F.3d at 790. Moreover, because the process of summary judgment is "not obvious to a layman," *Vital v. Interfaith Medical Ctr.,* 168 F.3d 615, 620 (2d Cir.1999) the district court must ensure that a *pro se* plaintiff understands the nature, consequences and obligations of summary judgment, *see id.* at 620–621. Thus, the district court may itself notify the *pro se* plaintiff as to the nature of summary judgment; the court may find that the opposing party's memoranda in support of summary judgment provide adequate notice; or the court may determine, based on thorough review of the record, that the *pro se* plaintiff understands the nature of summary judgment. *See id.*

In its ruling on the initial motion for summary judgment in this case, the court made a finding, based on a review of the record at that time, that the *pro se* plaintiff understood the nature, consequences, and obligations of summary judgment. See Ruling on Mot. for Summ. Judg., Doc. # 249, at 12–13. After reviewing the defendants' memorandum in support of the instant motion and the plaintiff's submissions in opposition to it, the court concludes that the *pro se* plaintiff continues to understand the nature, consequences and obligations of summary judgment.

## III. *DISCUSSION*

In their supplemental motion for summary judgment, the defendants address the six claims raised by the plaintiff's complaint which were not addressed by the original motion for summary judgment. The defendants argue that they are entitled to summary judgment as to each of these claims.

### A. Warrantless Entry into Plaintiff's Apartment

Ms. Rzayeva claims that the defendants violated her Fourth and Fourteenth Amendment rights when Officer Foster entered her home without consent and without a warrant on the evening of November 11, 1996. The plaintiff describes the events of that night as follows:

Officer Foster came to my home when I was sleeping as it was after 10 p.m. He asked my neighbor, Raisa Barsegova, to knock [on] my door. When I opened the door and saw the police officer I asked him to wait since I was in my night gown. Without my permission, also

without any warrant, he entered in my apartment.

Compl. at 6.[4]

■ "The Fourth Amendment provides that the 'right of the people to be secure in their houses shall not be violated.' We have recognized that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Illinois v. Rodriguez*, 497 U.S. 177, 191, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (internal citations omitted). "Warrantless searches inside a home are presumptively unreasonable." *Tierney v. Davidson*, 133 F.3d 189 (2d Cir. 1998). "Absent exigent circumstances or some other exception, the police must obtain a warrant before they enter the home to conduct a search or otherwise intrude on an individual's legitimate expectation of privacy." *U.S. v. Gori*, 230 F.3d 44, 50 (2d Cir.2000).

■ The defendants claim that the plaintiff "voluntarily conversed with the officer", and that "it is likely that consent existed" for the officer to enter the apartment. Supp. Motion at 3, 4. In the alternative, the defendants assert that "even if there was not specific consent, a police officer is entitled to enter otherwise private premises for the purpose of protecting the public." Supp. Motion at 4. However, the defendants have not offered any evidence that *at the time of Officer Foster's entry*, as opposed to later, there was any need for "protecting the public" from the plaintiff, and therefore there has been no showing of exigent circumstances suffi-

cient to overcome the presumptive requirement of a warrant. Finally, the defendants argue that the plaintiff "does not claim any actual damages" arising out of any warrantless entry into her apartment. Supp. Motion at 5. But the fact that Ms. Rzayeva does not claim any specific damages from the intrusion into her home goes to the question of what relief should be accorded to the plaintiff should she eventually prevail on this claim, not to the question of whether she should be allowed to go forward on her claim at all.

It is not disputed that Officer Foster had no warrant to enter the plaintiff's home. However, the parties vigorously dispute the matter of whether Officer Foster had consent to enter. The defendants claim that he had some form of implied consent, and the plaintiff states that she absolutely did not give her consent. Thus, there exists a genuine issue of material fact as to whether Officer Foster had consent to enter the plaintiff's apartment. Therefore, summary judgment on this count would be inappropriate.

**B. Involuntary Mental Examination of Plaintiff and Seizure of the Plaintiff's Person**

The plaintiff asserts that her constitutional rights were violated when Officer Foster had her involuntarily taken from her home and subjected to a mental examination at St. Francis Hospital. The court has construed this allegation as a claim that the involuntary confinement violated the plaintiff's Fourteenth Amendment right to be free from deprivations of liber-

---

4. The incident is described similarly in a statement by the plaintiff's mother, who lives in the same building as the plaintiff, as follows: "On November 11, 1996 approximately after 10 p.m. somebody called to my door. My neighbor, Raisa Barsegova, opened the door and looked outside. She stated that it was a police officer, who asked to show him

my daughter's apartment. I followed after them on some distance. Raisa Barsegova knocked [on] Zhasmen's door, asking to open it. Zhasmen opened, then police officer said something and entered in her apartment. At that time I entered, too. Zhasmen was in her night gown." Reply, Exh. G.

ty without due process of law, and her Fourth Amendment right to be free from unreasonable seizure. *See Glass v. Mayas,* 984 F.2d 55, 57–58 (2d Cir.1993); *Williams v. Lopes,* 64 F.Supp.2d 37, 41–43 (D.Conn.1999). The court found in its ruling on the original motion for summary judgment that Officer Foster was insulated from liability in his individual capacity based on qualified immunity. Therefore, the only remaining issue as to this claim is whether Officer Foster, in his official capacity, and the City are entitled to summary judgment.

### 1. Fourteenth Amendment Due Process Clause

■■ Involuntary civil confinement is a "massive curtailment of liberty," *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), and cannot therefore be accomplished without due process of law. *See id.* at 492, 100 S.Ct. 1254; *Rodriguez v. City of New York,* 72 F.3d 1051, 1061 (2d Cir.1995). In this context, the Supreme Court has held that a "[s]tate cannot constitutionally confine without more a nondangerous individual who is capable of surviving in freedom by himself or with the help of willing and responsible family members." *O'Connor v. Donaldson,* 422 U.S. 563, 576, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *see also Glass,* 984 F.2d at 57. A finding of dangerousness is thus required before a person may constitutionally be deprived of her liberty interest.

Connecticut's statute governing civil confinement incorporates this dangerousness standard. It states:

> Any police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself, herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination under this section.

Conn.Gen.Stat. § 17a–503(a) (1990).

■ The facts, as agreed upon by both the defendants and the plaintiff, gave Officer Foster "reasonable cause" to conclude that the plaintiff was a danger to herself or others. Officer Foster had seen a note, written by the plaintiff and left on Mr. Santos' car, which stated that the plaintiff would commence a hunger strike if Mr. Santos did not leave the plaintiff alone. While at the plaintiff's apartment, Officer Foster observed the plaintiff becoming visibly upset. When the plaintiff asked Officer Foster to leave her apartment and he refused, the plaintiff threatened to cut her wrists and to throw herself out a third floor window, and she also made throat slashing gestures indicating a willingness to cut her own throat. Based on the plaintiff's actions, Officer Foster had "reasonable cause" to determine that the plaintiff had "psychiatric disabilities and [was] dangerous to ... herself or others or gravely disabled, and in need of immediate care and treatment".[5]

There is no dispute that Officer Foster followed the procedures set forth in Conn. Gen.Stat. § 17a–503a, the Connecticut statute permitting involuntary commitment of a person to a hospital for mental examination, when he placed the plaintiff in custody. The plaintiff was examined and released within less than twenty-four hours of being placed in custody, as required by law. As a matter of law, the

---

**5.** The report of the mental evaluation of the plaintiff performed later that night at St. Francis Hospital confirms that the plaintiff had an "adjustment disorder with mixed disturbance of conduct and emotions."

defendants' actions in committing the plaintiff against her will did not violate her due process rights under the Fourteenth Amendment, and therefore, the defendants are entitled to summary judgment as to this claim.

### 2. Fourth Amendment

█ It is uncontested that when the plaintiff was involuntarily taken from her home and subjected to a mental examination, she was "seized" within the meaning of the Fourth Amendment. *See Glass,* 984 F.2d at 58 (stating that "the infringement of ... liberty [resulting from civil confinement] was tantamount to the infringement of being arrested"). "The Fourth Amendment requires that an involuntary hospitalization 'may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard.'" *Id.* (quoting *Villanova v. Abrams,* 972 F.2d 792, 795 (7th Cir.1992)); *see also Williams,* 64 F.Supp.2d at 43.

The "governing legal standard" in this situation is codified in Conn.Gen.Stat. § 17a–503a, set forth in relevant part above. There is no dispute as to the manner in which Officer Foster took the plaintiff into custody, or as to the circumstances surrounding his decision to do so. The court finds as a matter of law that the defendants had probable cause to commit the plaintiff to a hospital against her will. Therefore, summary judgment will enter in favor of the defendants on this claim.

### C. Refusal to Investigate Plaintiff's Charges

█ The plaintiff further alleges that Officer Foster, Sergeant Hazen, and the City of Hartford violated her rights to equal protection under the law by refusing, because of her status as an alien, to inves-

tigate her claim of sexual harassment and indecent exposure by Mr. Santos and her claims against Officer Foster. This claim fails for two reasons. First, the plaintiff admits that she never filed a complaint against Mr. Santos with the police; Officer Foster's visit was prompted by a complaint from Mr. Santos, not the plaintiff. When Officer Foster attempted to discuss the matter of the plaintiff's conflict with Mr. Santos, the plaintiff became visibly upset, and eventually made the threat to "cut her veins" which resulted in Officer Foster calling the ambulance. The plaintiff does not claim to have filed any complaint against Mr. Santos after this incident, either. If no complaint was filed, the plaintiff can not bring an action because there was no investigation.

Second, the plaintiff admits that Sergeant Hazen met with her and discussed the allegations that Officer Foster had acted illegally in admitting the plaintiff to the hospital against her will. *See* Plaintiff's Reply to Defendants' Supplemental Memorandum ("Reply"), Doc. # 288, Exh. L. There is no dispute as to the fact that Sergeant Hazen and other officers investigated and prepared reports regarding the plaintiff's complaints against Officer Foster. *See* Reply, Exh. O.

The plaintiff has not created a genuine issue of material fact as to her allegation that the defendants failed to investigate her claims. Summary judgment in favor of the defendants is therefore appropriate on this claim.

### D. Intentional Infliction of Emotional Distress

█ The defendants also seek summary judgment as to the plaintiff's claim that the actions of the defendants constituted intentional infliction of emotional distress. The Connecticut Supreme Court has set forth clearly the necessary ele-

ments of a claim for intentional infliction of emotional distress:

> In order for the plaintiff to prevail in a case for liability under intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Appleton v. Board of Educ. of the Town of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (2000) (internal quotation marks and citations omitted). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Ancona v. Manafort Bros., Inc.,* 56 Conn.App. 701, 746 A.2d 184, 192 (2000).

 Neither Officer Foster nor Sergeant Hazen acted in an "extreme and outrageous" manner in their dealings with the plaintiff. With the exception of the question of whether Officer Foster entered the plaintiff's home without her consent, Officer Foster's actions, described above, in proceeding to the plaintiff's apartment, speaking with her about her problems with Mr. Santos, and eventually taking the plaintiff to the hospital against her will, have already been found by this court to be reasonable in light of all the undisputed circumstances. Thus, the plaintiff's only remaining actionable claim as to Officer Foster is that he intentionally caused her emotional distress by unlawfully entering her apartment where he saw her in her nightgown. *See* Reply at 52–54. Even if the plaintiff's contention as to Officer Fos-

ter's conduct is found to be true, that conduct would not rise to the level of "extreme and outrageous" conduct of a nature especially calculated to cause mental distress of a very serious kind, which is what is required to sustain a claim of intentional infliction of emotional distress.

 The plaintiff likewise has no actionable claim that Sergeant Hazen intentionally caused her emotional distress. The court has determined that there is no basis for concluding that Sergeant Hazen did not investigate Ms. Rzayeva's complaints against Officer Foster. Thus, the only support for a finding of intentional infliction of emotional distress would be the plaintiff's statement that Sergeant Hazen threatened to ensure that the plaintiff failed the citizenship test. However, such behavior by Sergeant Hazen, if it occurred, would not under the circumstances of this case constitute conduct "exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Ancona,* 746 A.2d at 192.

Although the parties dispute what conduct was engaged in by each of Officer Foster and Sergeant Hazen, there is no "genuine issue of material fact" which would "affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment in favor of the defendants is therefore appropriate on this claim.

### E. Negligent Infliction of Emotional Distress

 The defendants argue that they are entitled to summary judgment as to the claim of negligent infliction of emotional distress as well. In order to prevail on a claim for negligent infliction of emotional distress, a plaintiff must show that "the defendant should have realized that its

conduct involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm." *Montinieri v. Southern New England Telephone Co.*, 398 A.2d 1180, 1184, 175 Conn. 337, 345 (1978).

■ As noted above, Officer Foster's actions, with the exception of the question of whether he entered the plaintiff's home without her consent, have already been found by this court to be reasonable in light of all the undisputed circumstances. Even if Officer Foster entered the plaintiff's home without her consent, where he saw her in her nightgown, as contended by the plaintiff, and in addition took the actions the court has determined were reasonable in light of all the undisputed circumstances, his conduct would not have been of such a nature that he should have known that it "involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm." *Montinieri*, 398 A.2d at 1184.

The *Montinieri* test "requires that the fear or distress experienced by the plaintiff[ ] be reasonable in light of the conduct of the defendant[ ]." *Barrett v. Danbury Hosp.*, 654 A.2d 748, 757, 232 Conn. 242, 261 (1995). The circumstances surrounding Officer Foster's visit to the plaintiff's home are as follows. The plaintiff had left a note on Mr. Santos' car, about which Mr. Santos had complained to the police. Officer Foster was dispatched to interview the plaintiff about the incident. When Officer Foster arrived at the apartment, the plaintiff opened the door voluntarily, wearing only her nightgown. Although Ms. Rzayeva complains that she was tricked into opening the door because it was her neighbor, and not Officer Foster, who knocked on the door and called to her to open it, she nonetheless willingly opened the door into a public hallway wearing only her nightgown. The plaintiff admits that she was told that Officer Foster was there because he had been informed that she had been harassing Mr. Santos. There is nothing in these circumstances to suggest that Officer Foster should have anticipated that Ms. Rzayeva might suffer emotional distress severe enough to result in illness or bodily harm as a result of his conduct.

■ Likewise, there is no genuine issue of material fact as to the conduct of Sergeant Hazen. Even if the plaintiff's contention that Sergeant Hazen threatened to make sure that the plaintiff failed the citizenship test is found to be true, such a statement by Sergeant Hazen could not reasonably have been expected, under the circumstances, to involve an unreasonable risk of causing emotional distress that might result in illness or bodily harm. The *Montinieri* test "requires that the fear or distress experienced by the plaintiff[ ] be reasonable in light of the conduct of the defendant[ ]." *Barrett*, 654 A.2d at 757. Sergeant Hazen had no apparent connection to the immigration authorities and did not state that she did, and it was not reasonable that the plaintiff experience, as a result of any comment by Sergeant Hazen regarding the citizenship test, distress of such a magnitude that it might result in illness or bodily harm. The comment allegedly made by Sergeant Hazen was nothing more than words made in circumstances that were not out of the ordinary. Thus, even if the plaintiff's factual contention were found to be true, that would not be sufficient to sustain a claim for negligent infliction of emotional distress. *See, e.g., Ancona*, 746 A.2d at 192–93 (upholding trial court ruling in favor of defendant on claim for negligent infliction of emotional distress where "the plaintiff failed to show that the defendant should have anticipated that its [filing a lawsuit against the plaintiff] would cause the plain-

tiff any emotional distress beyond that normally associated with litigation"); *Morice v. Bogaert,* No. CV97–82069, 1999 WL 27193, at *1 (Conn.Super. Jan.6, 1999) (granting motion to strike claim of negligent infliction of emotional distress where plaintiff "failed to allege any facts which would show how this defendant should have anticipated that emotional distress might result in illness or bodily harm"). *Compare Pattavina v. Mills,* No. CV96–0080257S, 2000 WL 1626960, at *9 (Conn.Super. Aug.23, 2000) (finding for plaintiffs on negligent infliction of emotional distress claim, where caregiver defendants physically abused the plaintiffs' mentally disabled son).

Although the parties dispute what conduct was engaged in by each of Officer Foster and Sergeant Hazen, there is no "genuine issue of material fact" which would "affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Thus, summary judgment in favor of the defendants is appropriate on this claim.

## IV. *CONCLUSION*

For the reasons stated above, the defendants' supplemental motion for summary judgment [Doc. # 276] is hereby DENIED as to the plaintiff's claim that her Fourth and Fourteenth Amendment rights were violated by Officer Foster's warrantless entry into her apartment, and hereby GRANTED as to the following claims: (1) Officer Foster and the City of Hartford violated the plaintiff's liberty interests under the Due Process Clause of the Fourteenth Amendment by forcing the plaintiff to involuntarily submit to a mental examination; (2) Officer Foster and the City of Hartford violated the plaintiff's Equal Protection rights by refusing, on account of her alienage, to investigate the plaintiff's claims; (3) Officer Foster and Sergeant

Hazen intentionally caused the plaintiff emotional distress; and (4) Officer Foster and Sergeant Hazen negligently caused the plaintiff emotional distress.

Summary judgment has been granted in favor of the defendants Sergeant Mary Hazen and the City of Hartford as to all claims against them. The Clerk shall terminate Hazen and the City as defendants in this matter. The only remaining defendant is Officer Edward Foster.

It is so ordered.