BENJAMIN ANCONA *v.* MANAFORT BROTHERS, INC.
(AC 18372)

Lavery, Landau and Dupont, Js.

Argued December 10, 1999—officially released February 22, 2000

*Vincent F. Sabatini*, with whom, on the brief, was *Tara K. Lyons*, for the appellant (plaintiff).

*Kenneth R. Slater, Jr.*, for the appellee (defendant).

Opinion

DUPONT, J. The plaintiff, Benjamin Ancona, in this action for vexatious litigation, appeals from the judgment for the defendant, Manafort Brothers, Inc., also known as Connecticut Waste Processing, Inc., rendered after a trial to the court. On appeal, the plaintiff claims that the court improperly concluded that (1) the defendant could assert the existence of probable cause to initiate the underlying breach of contract action, (2) the defendant had probable cause, (3) the defendant relied on the advice of counsel in bringing the underlying action so as to constitute a defense to the plaintiff's vexatious litigation claim, (4) the plaintiff failed to prove malice on the part of the defendant and (5) the plaintiff failed to sustain his burden of proof with regard to his claims for intentional infliction of emotional distress, negligent infliction of emotional distress and for a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. The plaintiff owns an apartment complex on West Street in New Britain. In 1988, the plaintiff entered into a contract with Dainty Rubbish to collect the rubbish and trash from a dumpster that served the

apartment complex. In 1990, the defendant took over the account from Dainty Rubbish. In 1991, the plaintiff and the defendant signed a new contract, the term of which extended from November 1, 1991, to November 1, 1995. Although the contract had a term of four years, it could be terminated by either party by written notice on a yearly basis. Specifically, the contract provided that its term shall be for a minimum of one year and that it would be "automatically renewed from year to year unless either party shall give written notice of termination to the other at least thirty (30) days prior to the annual termination date." The contract also provided that if the plaintiff became delinquent in his monthly charges, the defendant was entitled to all costs of collection, including reasonable attorney's fees.

The plaintiff was dissatisfied with the defendant's services during the first year of the contract. In late October, 1992, the defendant sent the plaintiff the bill for November, 1992, which included a 7 percent increase as provided for in the contract. The plaintiff did not send notice exercising his right to terminate the contract, and on November 1, 1992, the contract was automatically renewed for another year. The plaintiff thereafter contacted another trash removal company and discovered that he could get service for $181 per month. The plaintiff discussed this price with the defendant's representative, Peter Rappoccio, who mentioned a figure of $185 per month. The defendant, however, sent the plaintiff a proposed contract with a price of $200 per month.

The parties continued to disagree over the contract price, with the plaintiff insisting on the price of $185 a month. When the parties could not agree on a price, the plaintiff told Rappoccio to remove the defendant's dumpster. Rappoccio reminded the plaintiff that the contract was in force until November, 1993, and that the plaintiff still owed the defendant the charges for

November and December, 1992, which amounted to $431.37. The plaintiff disputed whether the contract remained in effect and insisted that the dumpster be removed.

Prior to removal of the dumpster, Rappoccio requested that the plaintiff pay the defendant the $431.37, the amount of unpaid charges for November and December, 1992, and that the plaintiff mark the check "final payment." According to the defendant, this would show the plaintiff's refusal to continue paying under the contract and that the defendant's removal of the dumpster was not a breach of the contract. The plaintiff claimed that he believed the payment "represented a total resolution of all differences between the parties, including the amount owed and future obligations." The plaintiff paid the defendant with a check marked final payment, and the defendant cashed the check. Throughout the discussions, the parties did not mention lost profits for the balance of the term of the contract.

Thereafter, the defendant's attorneys sent a letter to the plaintiff in January, 1993, demanding payment of $8340.17, "representing [the] total amount due on [the] contract." The plaintiff responded that the contract had been terminated and that he did not owe the defendant any money. On February 10, 1993, the defendant's attorney filed an application for a prejudgment remedy in the amount of $4000, representing lost profits for the complete term of the contract and collection costs due to the plaintiff's alleged breach. The plaintiff, appearing pro se, filed a motion to dismiss the defendant's prejudgment remedy application. The defendant's attorney, however, withdrew the application prior to any ruling by the court.

On May 19, 1993, the defendant brought an action against the plaintiff for breach of contract, seeking to

recover lost profits. It is this action that the plaintiff claims as the subject of the present vexatious litigation action. The plaintiff filed a motion for summary judgment, claiming that his tender of the check for $431.37 marked final payment and the defendant's acceptance of that check constituted an accord and satisfaction of the dispute under the contract. The defendant claimed that the check represented payment for charges past due and that the defendant never agreed to a complete settlement of the plaintiff's obligations under the contract, which the defendant claimed remained in effect until November, 1993.

The court granted the plaintiff's motion for summary judgment with a one sentence opinion, stating: "There was a dispute as to the amount and term of the contract, and the acceptance of the check marked final payment (twice) constitutes an accord and satisfaction. *County Fire Door Corp.* v. *C. F. Wooding Co.*, 202 Conn. 277, 281 [520 A.2d 1028] (1987)." The defendant did not appeal from that judgment.

The plaintiff claims that he suffered severe stress because of the defendant's claims in January, 1993, that the plaintiff still owed the defendant money under the contract and the defendant's initiation of the action in May, 1993. In May, 1993, the plaintiff checked himself into a hospital emergency room after feeling heart palpitations, and he consulted physicians over the course of that year and continues to take medication.

The plaintiff brought the present action in August, 1994, alleging vexatious litigation, intentional infliction of emotional distress, negligent infliction of emotional distress and a violation of CUTPA. The court rendered judgment for the defendant on all counts, and the plaintiff appealed.

I

The plaintiff first claims that the court improperly concluded that the doctrine of collateral estoppel did

not preclude the defendant from relitigating the existence of probable cause to bring the underlying action for breach of contract because that issue had been litigated and decided in that action. We disagree.

"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . . . *Milford* v. *Andresakis*, 52 Conn. App. 454, 460–61, 726 A.2d 1170, cert. denied, 248 Conn. 922, 733 A.2d 845 (1999).

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. . . . *Dowling* v. *Finley Associates, Inc.*, [248 Conn. 364, 374, 727 A.2d 1245 (1999)]." (Citations omitted; internal quotation marks omitted.) *Pitchell* v. *Williams*, 55 Conn. App. 571, 577–78, 739 A.2d 726 (1999), cert. denied, 252 Conn. 925, 746 A.2d 789 (2000).

"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and

finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (Citation omitted; internal quotation marks omitted.) *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 460–61, 736 A.2d 811 (1999). "Collateral estoppel . . . presents a question of law that we review de novo." *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 596, 726 A.2d 502 (1999).

The plaintiff asserts that the court's granting of summary judgment in his favor in the underlying action establishes the absence of probable cause for that action and, therefore, the defendant is collaterally estopped from litigating the issue in this case. The plaintiff, however, misconstrues the nature of the summary judgment and the doctrine of collateral estoppel. The plaintiff's motion for summary judgment was based solely on his claim that the parties reached an accord and satisfaction of their contract dispute with the plaintiff's tender and the defendant accepted a check marked final payment. The court, in granting the plaintiff's motion, rendered a judgment on the merits of the defendant's breach of contract action. The parties never raised, nor did the court address, the issue of whether the defendant had probable cause for bringing that action in the first place.

The court in the present case stated: "The plaintiff also argues that [the court's] deciding for the plaintiff here on a motion for summary judgment reveals the lack of merit in [the] defendant's initial suit and dramatically demonstrates the lack of probable cause for bringing it. The argument is invalid. The fact [that it] was a summary judgment decision is irrelevant. If it were, every summary judgment decision in favor of a defendant could always generate a vexatious suit. The

essence is that [the court's] decision did not reach the issue of probable cause for bringing the initial suit."

We conclude that the issue of probable cause could not have been fully and fairly litigated in the previous action because it was not raised by the parties. The issue of this case is not the same issue as that resolved by the previous court when it rendered summary judgment based on the doctrine of accord and satisfaction. Accordingly, the court properly determined that the doctrine of collateral estoppel did not preclude the defendant from litigating the existence of probable cause for instituting the previous action.

## II

The plaintiff next claims that the court improperly determined that the defendant had probable cause to institute the underlying action. We are not persuaded.

"A vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint. To establish either cause of action, it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor . . . . Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action . . . . Malice may be inferred from lack of probable cause . . . . The want of probable cause, however, cannot be inferred from the fact that malice was proven . . . . The existence of probable cause is an absolute protection . . . and what facts, and whether particular facts, constitute probable cause is always a question of law. . . . *Vandersluis* v. *Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978)." (Internal quotation marks omitted.) *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 593–94, 715 A.2d 807

(1998); see *Brodrib* v. *Doberstein*, 107 Conn. 294, 296, 140 A. 483 (1928).

"For purposes of a vexatious suit action, [t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. . . . Thus, in the context of a vexatious suit action, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted. *DeLaurentis* v. *New Haven*, 220 Conn. 225, 256, 597 A.2d 807 (1991)." (Citations omitted; internal quotation marks omitted.) *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, supra, 49 Conn. App. 594.

On the basis of the evidence produced, the court determined that when the parties' negotiations over a new monthly rate had broken down, the defendant agreed to remove its dumpster if the plaintiff paid $431.37, the amount due for November and December, 1992, and that the defendant's representatives insisted that the check be marked "final payment" so that the defendant's removal of the dumpster would not be construed as a breach of contract. The court also determined that throughout their discussions, the parties never mentioned the defendant's claim for lost profits for the remainder of the contract term. The court concluded that "[a] reasonable person participating in the conversation between the parties could have concluded, as [the] defendant did, that the check marked 'final payment' (as [the] defendant's representative insisted it be marked), constituted satisfaction of the November and December 1992 unpaid charges only,

and did not in any way relate to [the] defendant's claim for lost profits of the balance of the year." The facts establish that the defendant had a good faith belief in the validity of its claim for lost profits for the remainder of the contract term sufficient to justify a reasonable person in instituting an action against the plaintiff.

On the basis of our plenary review, we conclude that the court's conclusion was proper. Accordingly, the plaintiff's claim must fail.[1]

## III

The plaintiff next claims that the court improperly concluded that he failed to prove malice on the part of the defendant. We disagree.

"In a vexatious suit action, the defendant is said to have acted with 'malice' if he acted primarily for an improper purpose; that is, 'for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based'; 3 Restatement (Second), Torts § 676 . . . . Thus, while malice may be inferred from the lack of probable cause, lack of probable cause may not be inferred from malice." (Citation omitted.) *DeLaurentis* v. *New Haven*, supra, 220 Conn. 256 n.16.

Here, the court concluded that probable cause existed for the defendant bringing its breach of contract action and that the defendant "brought this suit solely to

---

[1] After concluding that the defendant had probable cause to initiate its breach of contract action against the plaintiff, the court stated: "A further basis for deciding for the defendant is that [the] defendant relied upon the advice of counsel" so as to constitute a valid defense to the plaintiff's vexatious suit claim. Because we conclude that the court properly determined that the defendant had probable cause to institute the underlying breach of contract action, which constitutes an absolute protection to the plaintiff's vexatious suit claim; see *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, supra, 49 Conn. App. 594; we do not address this alternative basis for the court's decision.

collect damages on that claim and for no other ulterior purpose." The evidence relied on by the plaintiff fails to establish that the defendant acted primarily for any purpose other than securing an adjudication of its claim. The conclusion of the court that the plaintiff failed to prove malice on the part of the defendant must stand.

## IV

The plaintiff next claims that the court improperly concluded that he failed to sustain his burden of proof with regard to his claims for intentional infliction of emotional distress, negligent infliction of emotional distress and for a violation of CUTPA. We address these claims in turn.

## A

The plaintiff first claims that the court improperly concluded that he failed to prove his claim for intentional infliction of emotional distress. The basis for the plaintiff's claim is that the defendant commenced its breach of contract action without probable cause. Because we have concluded that the plaintiff cannot prevail on his claim for vexatious litigation, his cause of action for intentional infliction of emotional distress has been greatly compromised.

"[F]or the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Hiers* v. *Cohen*, 31 Conn. Sup. 305, 329 A.2d 609 (1973); 1 Restatement (Second), Torts § 46. *Petyan* v. *Ellis*, [200 Conn. 243,

253, 510 A.2d 1337 (1986)], quoting *Murray* v. *Bridge-port Hospital*, 40 Conn. Sup. 56, 62, 480 A.2d 610 (1984). Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. *Petyan* v. *Ellis*, supra, 254 n.5, quoting W. Prosser & W. Keeton, Torts (5th Ed.) § 12, p. 60. Thus, [i]t is the intent to cause injury that is the gravamen of the tort; *Hustler Magazine, Inc.* v. *Falwell*, 485 U.S. 46, 53, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988) . . . . *DeLaurentis* v. *New Haven*, [supra, 220 Conn. 266–67]. Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court." (Internal quotation marks omitted.) *Bell* v. *Board of Education*, 55 Conn. App. 400, 409–10, 739 A.2d 321 (1999).

The trial court, relying on *DeLaurentis* v. *New Haven*, supra, 220 Conn. 263, held that the allegations in a civil suit complaint "are absolutely privileged at common law and that no cause of action for intentional infliction of emotional distress based on those statements can lie." (Internal quotation marks omitted.) The court also held that the plaintiff failed to prove that the defendant's conduct in bringing the action for breach of contract was extreme and outrageous or that the conduct was intended to cause emotional distress. The plaintiff claims that in evaluating his claim, the court should have considered not only the filing of the underlying action but also the defendant's actions in collecting the debt. The course of conduct, according to the plaintiff, is the defendant's "failure to abide by its oral promise to forward a contract with a $185 monthly charge, its shadowy procurement of [the plaintiff's] final check, its issuance of an exorbitant and unitemized demand letter, its filing of a [prejudgment remedy application]

with accompanying affidavit that failed to disclose relevant facts, the later withdrawal of the [prejudgment remedy application] and its initiation and pursuit of its breach of contract action . . . ." Even assuming the conduct of the defendant was as characterized and listed by the plaintiff, we conclude that the plaintiff has failed to establish that the conduct was extreme and outrageous as required to prove a claim for intentional infliction of emotional distress. The conclusion of the court is legally and factually supported by the evidence and must stand.

## B

The plaintiff next claims that the court improperly concluded that he failed to prove his claim for negligent infliction of emotional distress. We do not agree.

To prevail on this claim, the plaintiff must prove that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm. . . . *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 683, 513 A.2d 66 (1986); *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978) . . . ." (Citations omitted; internal quotation marks omitted.) *Pavliscak* v. *Bridgeport Hospital*, 48 Conn. App. 580, 597, 711 A.2d 747, cert. denied, 245 Conn. 911, 718 A.2d 17 (1998).

In the present case, the court held that the "plaintiff also failed to show that [the] defendant should have anticipated that its prosecuting its claim for damages based on [the] plaintiff's breach of contract would cause [the] plaintiff any emotional distress beyond that normally associated with litigation. Moreover, [the] plaintiff had plenty of experience with litigation, having himself brought numerous suits against his tenants." The plaintiff again claims that the court should have

considered facts in addition to the defendant's filing of the underlying breach of contract action in deciding this claim. Specifically, the plaintiff claims that the defendant's conduct from the time of the contract dispute in 1992 to the termination of the underlying breach of contract action in late 1993 establishes conduct that the defendant should have realized involved an unreasonable risk of causing emotional distress to the plaintiff. The plaintiff's conclusory statements, however, are insufficient to support a claim for negligent infliction of emotional distress. Absent evidence to the contrary, we cannot say that the court's conclusion was improper.

## C

The plaintiff's final claim is that the trial court improperly concluded that he failed to prove his claim for a violation of CUTPA. Specifically, the plaintiff claims that the court should have concluded that the defendant violated CUTPA by instituting the breach of contract action and by its course of conduct with the plaintiff. We disagree.

"Connecticut courts, when determining whether a practice violates CUTPA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). . . . *Prishwalko* v. *Bob Thomas Ford, Inc.*, 33 Conn. App. 575, 584, 636 A.2d 1383 (1994). Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . *Web Press Services Corp.* v. *New*

*London Motors, Inc.*, 203 Conn. 342, 355, 525 A.2d 57, following remand, 205 Conn. 479, 533 A.2d 1211 (1987)." (Internal quotation marks omitted.) *Kenney* v. *Healey Ford-Lincoln-Mercury, Inc.*, 53 Conn. App. 327, 330, 730 A.2d 115 (1999). "Whether a practice is unfair and thus violates CUTPA is an issue of fact. . . . The facts found must be viewed within the context of the totality of circumstances which are uniquely available to the trial court." (Internal quotation marks omitted.) *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 794, 720 A.2d 242 (1998).

The court in the present case, relying on *Suburban Restoration Co.* v. *ACMAT Corp.*, 700 F.2d 98, 102 (2d Cir. 1983), which applied Connecticut law, held that "filing a single non-sham lawsuit [one having probable cause] . . . cannot form the basis of a claim under CUTPA." The court further held that the plaintiff failed to prove his claim because the defendant's conduct did not violate any "established concept of unfairness and was not immoral, unethical, oppressive or unscrupulous." (Internal quotation marks omitted.)

The plaintiff has not pointed to any authority that would support his claim that the filing of a civil action with probable cause could form the basis of a violation of CUTPA. Moreover, on the basis of the facts found, we agree that the defendant's conduct was not unlawful, did not offend public policy or some established concept of what is fair, was not immoral, unethical, oppressive or unscrupulous, and did not cause substantial injury to consumers or competitors. We cannot, therefore, conclude that the court's findings were clearly erroneous. Accordingly, we conclude that the court properly found that the defendant did not violate CUTPA.

The judgment is affirmed.

In this opinion the other judges concurred.