[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#114)
The defendant, Eva Eszterhai,[1] moves for summary judgment on the first, third, fifth, seventh and ninth counts of the amended complaint filed by the plaintiff, Karen Gorra. For the reasons set forth below, the motion is granted as to the first, third, seventh and ninth counts, and denied as to the fifth count.
 Facts
The plaintiff alleges the following facts in all counts of the amended complaint. Seacorp, Inc. (Seacorp) is a corporation that operates group homes for the mentally retarded. On June 11, 1998, the plaintiff had been a full time employee at one of Seacorp's group homes for approximately ten years. The defendant, who was the executive director of Seacorp, informed the plaintiff that she was being placed on suspension without pay pending the investigation of allegations of neglect and abuse of clients. Despite requests by the plaintiff and her counsel, the defendant never informed the plaintiff of the source of the allegations of abuse and neglect or of the facts upon which the allegations were based. On July 6, 1998, the defendant met with the plaintiff and asked her a series of questions that did not reveal the specifics of the allegations. At that time, the defendant also refused the plaintiff's request to provide the specifics of the allegations so that the plaintiff could reply to them in a meaningful way. On July 7, 1998, the defendant notified the plaintiff by letter that her employment was terminated because allegations of abuse, neglect and violation of clients' rights had been sustained after a thorough investigation. The defendant knew or should have known that the allegations brought against the plaintiff were false and of no substance and that her representation that she conducted a thorough investigation of the allegations was false.
The first and third counts sound in intentional infliction of emotional distress and negligent infliction of emotional distress, respectively. In the fifth count, the plaintiff further alleges that the defendant defamed the plaintiff by publishing the results of the alleged investigation to the protection and advocacy office of the state department of mental retardation. In the seventh count, the plaintiff further alleges that on August 1, 1998, the defendant violated General Statutes § 31-128f by disclosing the reasons for the plaintiff's termination to an individual named Lucille Cavan. In the ninth count, the plaintiff further alleges that the conduct alleged in the seventh count constituted an invasion of the plaintiff's privacy.
The defendant filed a motion for summary judgment on March 11, 2002. The motion is supported by an affidavit, other evidence and a memorandum CT Page 10247 of law. The plaintiff filed a memorandum of law, an affidavit and other evidence in opposition to the motion on April 12, 2002. Additional facts are set forth as necessary for resolution of the defendant's claims.
 Discussion
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]." (Internal quotation marks omitted.)H.O.R.S.E. of Connecticut, Inc. v. Washington, 258 Conn. 553, 559,783 A.2d 993 (2001).
 I INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
The defendant first claims that she is entitled to summary judgment on the first count of the amended complaint because the plaintiff cannot prove intentional infliction of emotional distress. Specifically, the defendant argues that the plaintiff cannot prove (1) that the defendant engaged in any extreme and outrageous conduct, or (2) that the plaintiff suffered severe emotional distress.
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.)Appleton v. Board of Education, 254 Conn. 205, 210, 757 A.2d 1059
(2000). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court." (Internal quotation marks omitted.)Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 712, 746 A.2d 184, cert. denied, 252 Conn. 954, 749 A.2d 1202 (2000). "Liability for CT Page 10248 intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) Dollard v. Board ofEducation, 63 Conn. App. 550, 554, 777 A.2d 714 (2001).
 A
The court will first address whether the facts in the present case, viewed in the light most favorable to the plaintiff, could support a finding of extreme and outrageous conduct. "For purposes of the tort of intentional infliction of emotional distress, extreme and outrageous conduct is that conduct that exceeds all bounds usually tolerated by decent society . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citation omitted; internal quotation marks omitted.) Id.
In the present case, the plaintiff does not contend that the defendant fabricated the allegations of abuse and neglect by the plaintiff. On the contrary, the plaintiff concedes in her memorandum of law that on June 10, 1998, "the defendant took a statement from an employee alleging misconduct by [the] plaintiff" and that on June 11, 1998, the "defendant received a fax from the department of mental retardation containing allegations against [the] plaintiff, . . . which were filed the previous day with the protection and advocacy office of [the department]."
The plaintiff claims that the following facts would support a conclusion of extreme and outrageous conduct.[2] The defendant indicated in her deposition testimony that, in the course of the investigation into the allegations of abuse and neglect, the questions she addressed to the six residents of the group home pertained only to verbal abuse. To the best of the plaintiff's recollection, only one resident, who was known to be unreliable, indicated that he was yelled at. The defendant stated that the resident indicated that he was mostly yelled at by one staff member, whose identity the defendant could not recall with certainty, although she thought it was the plaintiff. The defendant could not recall whether any of the staff members interviewed was aware of verbal abuse by the plaintiff. Similarly, the defendant could not recall the specifics of her interviews with individual staff members or whether they indicated that they had witnessed abuse. CT Page 10249
The plaintiff further relies on the following facts. Although the termination letter sent by the defendant to the plaintiff indicated that the investigation included an interview with a parent of one resident, the defendant stated during her deposition: "I didn't necessarily interview her. I was at the home doing a record review and she called and I asked her if there's something she wanted me to know and she talked. . . . Again, with the clarification, I don't believe I interviewed the parent. . . . I asked the parent if there was anything she wanted to tell me and I took notes of the conversation. "[3]
In addition, the plaintiff argues that despite the termination letter's statement that a record review was conducted, the "defendant testified [in her deposition] that she did not examine records which would appear to have the most relevance to her investigation." For example, the plaintiff suggests that because the person making the initial report of abuse or neglect worked primarily on the weekends and the plaintiff worked primarily on weekdays, the report was unreliable. Similarly, the plaintiff argues that a more thorough review of residents' records would have offered various pieces of information casting doubt on the allegations of abuse and neglect.
From all of these facts, the plaintiff concludes that the defendant's statement, in the termination letter, that she had conducted a "thorough investigation" was a misrepresentation, that the defendant lied when she wrote in the letter that she had interviewed a parent, that the investigation actually conducted was not thorough and did not substantiate the allegations of abuse or neglect, that the defendant's real motive for the termination was her personal animosity towards one of the plaintiff's friends and coworkers, and that the termination on the basis of abuse and neglect was a pretext.[4]
"In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." (Internal quotation marks omitted.) Thibodeau v. Design Group OneArchitects, LLC, 260 Conn. 691, 697-98, ___ A.2d ___ (2002). Thus, the mere termination of the plaintiff's employment clearly cannot form the basis of a claim of intentional infliction of emotional distress.
The plaintiff argues, nevertheless, that her termination was wrongful because it was based on an inadequate investigation of the allegations of abuse and neglect. The plaintiff also argues that the reason given for the termination was a pretext and that the actual motivation was a personal conflict with the plaintiff's friend and coworker. Even if true, these facts do not establish that the defendant's conduct was extreme and CT Page 10250 outrageous. "The mere act of firing an employee, even if wrongfullymotivated, does not transgress the bounds of socially tolerable behavior." (Emphasis added; internal quotation marks omitted.) Perodeauv. Hartford, 259 Conn. 729, 750, 792 A.2d 752 (2002).
In Appleton v. Board of Education, supra, 254 Conn. 205, the Supreme Court considered a claim of intentional infliction of emotional distress in the employment context. In that case, the plaintiff teacher complained that the school principal "made condescending comments to [her] in front of [her] fellow colleagues questioning [her] vision and ability to read; telephoned the plaintiff's daughter, representing that the plaintiff `had been acting differently' and should take a few days off from work; and telephoned the police, who came to the school and escorted the plaintiff out of the building to her car." (Internal quotation marks omitted.) Id., 211. "The plaintiff also asserted in her affidavit that she was subjected to two psychiatric examinations at the request of the board, and that she was forced to take a suspension and a leave of absence and, ultimately, forced to resign." Id. The Supreme Court stated: "These occurrences may very well have been distressing and hurtful to the plaintiff. They do not, however, constitute extreme and outrageous conduct within the meaning of the precedents. . . . As the defendants' actions in the present case were not so atrocious as to exceed all bounds usually tolerated by decent society, their conduct is insufficient to form the basis of an action for intentional infliction of emotional distress." Id., 211-12.
The Appellate Court reached a similar conclusion in Dollard v. Board ofEducation, supra, 63 Conn. App. 550. In that case, the plaintiff pleaded that she "was employed as a school psychologist. . . . [T]he defendants jointly engaged in a concerted plan and effort to force the plaintiff to resign from her position or to become so distraught that they would have a colorable basis for terminating her employment. The defendants carried out their plan by hypercritically examining every small detail of her professional and personal conduct. Specifically, the defendants transferred the plaintiff to a school where she did not want to be assigned and then secretly hired someone to replace her at the school from which she had been transferred. The defendants also publicly admonished the plaintiff for chewing gum, being habitually late, being disorganized and not using her time well. Finally, the defendants unnecessarily placed the plaintiff under the intensive supervision of a friend of [one of the defendants]. The defendants ultimately forced the plaintiff to resign." Id., 552-53.
The trial court struck the complaint and the Appellate Court affirmed, stating: "The court properly struck the plaintiff's claim of intentional infliction of emotional distress because the plaintiff did not plead CT Page 10251 facts that support her allegation that the defendants' conduct was extreme and outrageous. While the conduct alleged here may have been distressful and hurtful to the plaintiff, it was no more extreme and outrageous than the conduct alleged in Appleton." Id., 554-55.
The present case also presents facts that are no more extreme and outrageous than the conduct in Appleton and Dollard. The plaintiff concedes that she was terminated from her employment following an allegation that she abused or neglected one or more residents of the group home where she worked. The plaintiff disagrees with the defendant's ultimate conclusion that the allegation was substantiated by the subsequent investigation. The plaintiff also maintains that the investigation was inadequate. Even if the plaintiff is correct in her characterization of the investigation and its results, she still would not be entitled to relief under a theory of intentional infliction of emotional distress. It simply is not extreme and outrageous for an employer to terminate a staff member at a group home for the mentally retarded when a complaint has been received alleging neglect or abuse by the staff member. Terminating an allegedly abusive worker cannot be said to be so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Even when viewed in the light most favorable to the plaintiff, therefore, the facts of the present case cannot support a claim of intentional infliction of emotional distress.
 B
The court will now consider the defendant's claim that the facts asserted by the plaintiff in the present case are insufficient as a matter of law to support a finding of severe emotional distress. In analyzing the tort of intentional infliction of emotional distress, our Supreme Court has looked to the Restatement (Second), Torts, for guidance. See, e.g., Appleton v. Board of Education, supra,254 Conn. 210-11; DeLaurentis v. New Haven, 220 Conn. 225, 266-67,597 A.2d 807 (1991); Petyan v. Ellis, 200 Conn. 243, 253-54, 510 A.2d 1337
(1986). Although our state appellate courts have not elaborated the standard for severe emotional distress, the state and federal trial courts addressing the issue have applied the standard set forth in the Restatement. See Almonte v. Coca-Cola Bottling Co. of New York,959 F. Sup. 569, 575 (D.Conn. 1997); Forsythe v. Ambrogio, Superior Court, judicial district of New Haven at New Haven, Docket No. 404059 (June 28, 2001, Lager, J.); Clarke v. Diaz, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 163375 (August 6, 1998, D'Andrea, J.); Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 21,597 A.2d 846 (1991). 1 Restatement (Second), Torts § 46, comment (j) (1965) provides: "Emotional distress . . . includes all highly unpleasant CT Page 10252 mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity."
The sole grounds for the plaintiff's claim of severe emotional distress, as set forth in her memorandum of law, are as follows: "Plaintiff has seen a doctor weekly to deal with the emotional stress of her termination." (Citations omitted.) The sole evidence offered in support of this claim is the plaintiff's deposition testimony. The evidence relied on by the plaintiff is insufficient to support a conclusion of severe emotional distress. The mere fact that the plaintiff has seen a doctor once a week is insufficient to support a finding that she has suffered distress so severe that no reasonable person could be expected to endure it. As a matter of law, the plaintiff cannot establish severe emotional distress on these facts.
Because the plaintiff has failed to offer evidence sufficient to demonstrate extreme and outrageous conduct and severe emotional distress, the defendant is entitled to summary judgment on count one of the amended complaint.
 II NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
The third count of the complaint sounds in negligent infliction of emotional distress, and is based on the same conduct alleged in count one as set forth above. The defendant claims that she is entitled to summary judgment on the third count of the complaint because there is no evidence showing any unreasonable conduct by the defendant in the process of terminating the plaintiff's employment.
"In Montinieri v. Southern New England Telephone Co., 175 Conn. 337,345, 398 A.2d 1180 (1978), [our Supreme Court] recognized for the first time that recovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact. [The court] concluded, rather, that in such cases, the defendant would not be liable unless the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might CT Page 10253 result in illness or bodily harm." (Internal quotation marks omitted.)Perodeau v. Hartford, supra, 259 Conn. 749.
In Perodeau, our Supreme Court held that conduct occurring within a continuing employment relationship, as distinguished from conduct occurring in the termination of employment, cannot form the basis of an action for negligent infliction of emotional distress. Id., 762-63. The court, in refusing to impose a duty on employees to avoid negligently inflicting emotional distress on other employees, cited two overriding public policy concerns: "First, in an ongoing employment relationship, employees who fear lawsuits by fellow employees may be less competitive with each other, may promote the interests of their employer less vigorously, may refrain from reporting the improper or even illegal conduct of fellow employees, may be less frank in performance evaluations, and may make employment decisions such as demotions, promotions and transfers on the basis of fear of suit rather than business needs and desires. All of this conduct would contribute to a less vigorous and less productive workplace. . . . Second, in light of the inherently competitive and stressful nature of the workplace and the difficulties surrounding proof of emotional distress, extending the tort of negligent infliction of emotional distress to ongoing employment relationships would open the door to spurious claims." Id., 758.
In addition, the court stated: "[I]n the context of an ongoing employment relationship . . . individuals reasonably should expect to be subject to routine employment related conduct, including performance evaluations, both formal and informal; decisions related to such evaluations, such as those involving transfer, demotion, promotion and compensation; similar decisions based on the employer's business needs and desires, independent of the employee's performance; and disciplinaryor investigatory action arising from actual or alleged employeemisconduct. In addition, such individuals reasonably should expect to be subject to other vicissitudes of employment, such as workplace gossip, rivalry, personality conflicts and the like. . . . Thus, it is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace. . . . We recognize, however, that that does not mean that persons in the workplace should expect to be subject to conduct that . . . involves an unreasonable risk of causing emotional distress . . . that . . . if it were caused, might result in illness or bodily harm. . . . Nevertheless, . . . we conclude that, when the employment relationship is ongoing, the public policies . . . outweigh the interests of persons subject to such behavior in the workplace in being compensated for their emotional injuries." (Emphasis added.) Id., 757-58. CT Page 10254
In the present case, the plaintiff seeks to hold the defendant liable for negligent infliction of emotional distress arising from conduct occurring prior to the plaintiff's termination. Specifically, the plaintiff alleges that she experienced emotional distress as a result of disciplinary and investigatory action arising from actual or alleged misconduct. The Supreme Court's opinion in Perodeau clearly precludes liability under such a theory. Furthermore, the defendant has not alleged or offered evidence of any conduct in the termination itself that could support liability. Consequently, the defendant is entitled to summary judgment on the third count of the amended complaint.
 III DEFAMATION
In the fifth count, sounding in defamation, the plaintiff alleges that the defendant published the results of her investigation, including the allegations of abuse and neglect and the decision to terminate the plaintiff's employment, to the protection and advocacy office of the department of mental retardation. The plaintiff further alleges that the reporting and publication of this information was not done in good faith and constituted wilful and wanton misconduct and gross negligence. The defendant claims that she is entitled to summary judgment on the fifth count on the grounds that: (1) the alleged statements were absolutely privileged under the common law; (2) she has immunity pursuant to General Statutes § 46a-11b (e); and (3) she has a qualified immunity under the common law.
At the time of the events in the present case, General Statutes §17a-247b (a) provided in relevant part: "The Department of Mental Retardation shall establish and maintain a registry of individuals who have been terminated or separated from employment as a result of substantiated abuse or neglect." General Statutes § 17a-247b (e) provided in relevant part: "Not later than five business days following an employee's termination or separation from employment for abuse or neglect, an employer shall submit to the department the name of such employee and such other information as the department may request." The fifth count arises from the defendant's alleged reporting of the plaintiff's termination under § 17a-247b (e).
Immunity of employers reporting an employee's termination or separation from employment for abuse or neglect is governed by § 17a-247b (f) (now § 17a-247b (g)), which provides in relevant part: "No employer shall be liable in any civil action for damages brought by an employee . . . whose name appears on the registry established by this section arising out of the conduct of the employer in (1) making any report in CT Page 10255 good faith pursuant to subsection (e) of this section. . . . The immunity provided in this subsection shall not apply to gross negligence or to wilful or wanton misconduct." The defendant has not claimed immunity under that provision.
The defendant has argued that she is immune pursuant to § 46a-11b
(e), which applies to reports of abuse to the department of mental retardation. According to the defendant, she is immune under that section because she did not act with bad faith or with a malicious purpose when she reported the plaintiff's termination. The allegations in the fifth count, however, relate to the defendant's reporting of her investigation and termination of the plaintiff, which, as stated above, is governed by § 17a-247b. Although § 17a-247b (f), like § 46a-11b (e), limits immunity to reports made in good faith, § 17a-247b (f) contains an additional limitation, in that it does not apply to gross negligence or to wilful or wanton misconduct.
A thorough search has revealed no case law applying or interpreting the terms of § 17a-247b. The court is hesitant to render summary judgment on the defendant's claim of immunity without the benefit of any briefing from the defendant regarding the application of the appropriate statute to the facts of this particular case, and in the absence of any precedent interpreting or applying the statute's provisions. For this reason, the motion for summary judgment is denied as to the fifth count of the amended complaint.
 IV VIOLATION OF GENERAL STATUTES § 31-128f
The defendant next argues that she is entitled to summary judgment on the seventh count of the amended complaint because § 31-128f does not create a private right of action.
Section 31-128f provides that information contained in an employee's personnel file may not be disclosed by an employer except under certain enumerated circumstances. The judges of this court have repeatedly held that a violation of the Personnel Files Act, General Statutes § 31-128a
et seq., does not give rise to a private cause of action. See Espositov. Connecticut College, Superior Court, judicial district of New London at Norwich, Docket No. 117504 (September 1, 2000, Koletsky, J.) (28 Conn.L.Rptr. 47); Duncan v. Junior Achievement, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 335878 (January 27, 2000, Skolnick, J.); Dais v. Laidlaw Transit, Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 146079 (March 29, 1996, Ryan, J.) (16 Conn.L.Rptr. 392); Turzer v. ConnecticutCT Page 10256National Bank, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 279671 October 10, 1991, Spear, J. In accordance with the reasoning set forth in those previous cases, the defendant's motion for summary judgment is granted as to the seventh count of the amended complaint.
 V INVASION OF PRIVACY BY FALSE LIGHT
The defendant argues that she is entitled to summary judgment on the ninth count sounding in invasion of privacy by false light. Specifically, the defendant argues that the plaintiff cannot prove publicity sufficient to state a claim for invasion of privacy, that the alleged statement was not false, and that the defendant's communications were absolutely privileged.
In her memorandum of law, the plaintiff concedes that she cannot prove publicity sufficient to establish a claim for invasion of privacy by false light. Consequently, the motion for summary judgment is granted as to the ninth count of the amended complaint.
 Conclusion
For the reasons set forth above, the defendant Eva Eszterhai's motion for summary judgment is hereby granted as to the first, third, seventh and ninth counts of the amended complaint, and denied as to the fifth count.
D. Michael Hurley, JTR