[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Introduction
This is an action instituted by the Plaintiff, Holly Perron, against the Defendant, Gerald M. Robert, claiming damages for intentional sexual assault, reckless sexual assault, negligence, intentional infliction of emotional distress and negligent infliction of emotional distress which the Plaintiff alleges occurred when she was a minor between the ages of approximately six and twelve, from 1988 to 1994. Trial to the court was held on August 20, 2002. At that time the court heard testimony from the Plaintiff and Defendant as well as the Defendant's granddaughter, Jennifer Robert; a friend of the Plaintiff, Jennifer Morgan; and Jeanette Boynton, a friend of the Defendant.
Findings of Fact
Based upon a preponderance of the evidence, the court finds the following facts.
The Plaintiff, Holly Perron, is now twenty years old. The Defendant, Gerald M. Robert, is seventy-six. He is a private detective and a former member of the Hartford Police Department. The Plaintiff is the cousin of the Defendant's granddaughters, Crystal and Jennifer Robert. During the time in question, the Plaintiff lived in the same building as Crystal and Jennifer in East Hartford. Beginning when the Plaintiff was about six or seven years old she would go with Crystal and Jennifer and other friends to visit the Defendant at his home in West Hartford. This would occur approximately twice a month. The Defendant would pick the girls up at their home. Upon their arrival at his home, the Defendant would take all the girls' clothing, including their underwear, and put them in the wash. In their place, the Defendant would give the girls large police t-shirts, but no underwear, to put on. The girls would stay with the Defendant for a night or the whole weekend. Their clothes would be returned to them before they went home. The girls would spend much of CT Page 14027 their time in the basement of the Defendant's home dancing, making videos, and watching them on the televison. There was a large waterbed in the basement and the girls would lay in the bed and watch the movies they made. The Defendant would sometimes lay there with them. There was also a large stocked bar in the basement. The girls would drink alcohol, either getting it themselves from the bar or the Defendant would serve it to them. The Plaintiff began drinking when she was eight or nine. The Plaintiff started smoking at the Defendant's house when she was nine or ten. The Defendant also gave the girls marijuana a few times when they were ten or eleven. In the Defendant's yard was a Jacuzzi. The girls would also go into the Jacuzzi and remove their shirts. The Defendant would join them in the Jacuzzi sometimes nude as well.
When the Plaintiff was six or seven the Defendant began kissing her including sticking his tongue in her mouth when he kissed her and massaging her private parts. This continued until she was twelve or thirteen when the Defendant's activities were reported to the police in 1994. The Plaintiff thought the Defendant's conduct was normal because he said he was their grandfather and therefore he could do these things. The Defendant told the Plaintiff not to tell anyone because no one would believe her anyway because he was a police officer. The Plaintiff was also fearful of the Defendant because he had guns and handcuffs in his home.
Several months after Defendant's behavior was reported to the police in 1994 the Plaintiff moved to Vernon. She was depressed and afraid. She began to get into trouble in school. When she was in the ninth grade at Rockville High School the Defendant came to the school to see her. The Plaintiff was fearful of the Defendant and as a result she became afraid to go to school. She stayed home for much of the rest of her ninth grade. She subsequently dropped out of high school in the tenth grade. Since then she has been employed in a variety of low paying jobs, but has never stayed in any one job for more than a year.
The Plaintiff was hospitalized for depression and suicidal ideation in 1996 for two weeks when she was fourteen. Since then she has been treated off and on for depression and post traumatic stress syndrome which the medical records relate in part to her sexual abuse by the Defendant. She is currently being treated for agoraphobia, panic disorder and depression for which she is taking prescribed medication. The Plaintiff blames herself for what happened because she "let it get to her" and because she continued to go to the Defendant's home even after the abuse started. Yet at that time the Plaintiff was only a child and she thought she could trust the Defendant because he was her cousins' grandfather and a police officer. CT Page 14028
The Plaintiff's experience of abuse by the Defendant has resulted in the Plaintiffs low self-esteem, failure to finish high school, psychological disorders and inability to secure substantial employment.
Discussion
 Count One: Intentional Sexual Assault
In Count One of the Complaint the Plaintiff claims intentional sexual assault. In that Count the Plaintiff claims that in approximately 1988 the Defendant initiated unsolicited sexual contact with the Plaintiff which included inappropriate kissing and touching. The facts as found by the court support the Plaintiffs claim.[1] "The elements of the intentional tort of sexual assault . . . are `[a] harmful or offensive contact with a person, intended to cause the plaintiff . . . to suffer such a contact, resulting from an act . . .' W. Prosser W. Keeton, Torts (5th Ed. 1984), § 9, p. 39." Fernandez v. Standard FireInsurance Company, 44 Conn. App. 220, 224 n. 4 (1997). "The Connecticut appellate courts have yet to address the issue of whether alleged acts of sexual abuse of a minor may be deemed intentional or negligent. The overwhelming majority of jurisdictions that have considered the issue, however, have held that an intent to injure may be inferred as a matter of law in cases involving sexual contact between a child and an adult regardless of the insured's subjective intent. . . . The courts following the majority approach have concluded that sexual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that." (Citations omitted; internal quotation marks omitted.) Patrons Mutual Insurance Co.v. Maguire, Superior Court, judicial district of New Haven, Docket No. CV 950374329 (March 26, 1997, McMahon, J.). "Since Connecticut also finds that a person acts intentionally when that actor is substantially certain that the consequences of his acts are to follow, and because the majority of the courts have found that sexual assaults upon minors always result in some type of injury, this court also follows the majority rule and finds that when a complaint alleges a claim for sexual assault upon a minor, it will be inferred that the perpetrator intentionally committed the assault because society deems that the perpetrator will always be substantially certain that an injury will occur." Id. The court agrees with the analysis in Patrons Mutual and finds that the defendant's conduct was intentional. The Plaintiff was brought to the Defendant's home by him. She traveled there with her cousins, the Defendant's granddaughters. He voluntarily assumed the role of a grandfather with regard to the Plaintiff. The Plaintiff viewed the Defendant, as did her CT Page 14029 cousins, as a grandfather, a status which connotes to a child love, protection and happiness. The Defendant, who was in his sixties during the time of his sexual abuse of the Plaintiff, took advantage of the access to the Plaintiff that his status as a grandfather allowed him to sexually exploit her. Thus it can clearly be inferred that he was well aware of the harm that such conduct could cause the Plaintiff yet continued in his behavior until the police intervened.
In addition, the conduct found to have occurred here is a crime under our criminal statutes. General Statutes § 53a-73a provides that a person is guilty of sexual assault in the fourth degree when such person intentionally subjects another person to sexual contact who is under fifteen years of age. "Sexual contact" includes "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person." Here the facts establish that the Defendant engaged on numerous occasions in the sexual assault of the Plaintiff by his inappropriate kissing and touching of her when she was a child for the purpose of his own sexual gratification. Thus the court finds that the Plaintiff has proven that the Defendant engaged in various intentional sexual assaults against her as alleged in Count One of the Complaint.
Count Four: Intentional Infliction of Emotional Distress
In Count Four of the Complaint the Plaintiff claims that the Defendant "knew or should have know that his actions would result in serious emotional distress, psychological trauma and injury to the Plaintiff" and that his conduct was "extreme and outrageous." "In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Board of Education, 254 Conn. 205, 210
(2000). Here the Defendant clearly should have known that his sexual abuse of the Plaintiff and his supplying her with alcohol, tobacco and marijuana when she was only a child would result in extreme emotional injury to her. His conduct was, to anyone, extreme and outrageous. "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Ancona v. Manafort Bros., Inc., CT Page 1403056 Conn. App. 701, 712, 746 A.2d 184, cert. denied, 252 Conn. 954,749 A.2d 1202 (2000)." Biro v. Hirsch, 62 Conn. App. 11, 20 (2001). The sexual abuse of a child and the allowance and encouragement of her use of alcohol and drugs is inimical to the best interests of the physical and emotional well-being of any child and is conduct which clearly exceeds "all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind" as referenced in Biro. The medical records and the Plaintiffs own testimony also reveal that the Plaintiffs distress was caused by the Defendant's conduct. Lastly, the Plaintiffs emotional distress is severe. She has been hospitalized as a result and will likely continue to require medication and counseling in the future.
Therefore the Defendant is liable for the intentional infliction of emotional distress on the Plaintiff as alleged in Count Four of the Complaint.
Count Two: Reckless Sexual Assault; Count Three: Negligence; and CountFive: Negligent Infliction of Emotional Distress
In Count Two of the Complaint the Plaintiff alleges that by his conduct the Defendant "acted recklessly, wantonly and with careless disregard for the safety and well-being of the Plaintiff" and that his conduct was "extreme and outrageous." In Count Three of the Complaint the Plaintiff claims that the Defendant was negligent in that he owed a duty to the Plaintiff since he "had invited the minor Plaintiff into his home and had assumed responsibility for her health, well-being and safety, to act with the utmost good faith and solely for the benefit of the Plaintiff" and he breached that duty by engaging in the alleged abuse. In Count Five of the Complaint the Plaintiff claims a negligent infliction of emotional distress in that it was the duty of the Defendant "to act with the utmost good faith and solely for the benefit of the Plaintiff" and that by his abuse he breached his duty in a number of ways including engaging in such abuse when he knew his conduct involved an unreasonable risk of causing emotional distress to the Plaintiff.
Reckless and negligent conduct differ from intentional conduct. As the court stated in Rogers v. Doody, 119 Conn. 532, 535-536 (1935), "Reckless misconduct differs on the one hand from negligence and on the other from intentional misconduct. It differs from the former, in that it `requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man,' and in that the actor `must recognize that his conduct involves a risk substantially greater than that which is necessary to make his conduct negligent.' The CT Page 14031 difference between the two is so marked as to amount to a difference in kind. Restatement, Torts, § 500, comment g. A cause of action arising out of reckless disregard of the rights of others is not a cause of action for negligence. Grant v. MacLelland, 109 Conn. 517, 147 A. 138. Nor is it a cause of action for intentional wrongdoing. One guilty of reckless misconduct does not intend to cause the harm which results from it. It is enough that he realizes, or should realize, that there is a strong probability that such harm may result. Restatement, Torts, § 500, comment f. An intentional injury results from an act done for the purpose of causing the injury or with knowledge that the injury is substantially certain to follow. Restatement. Torts, § 13, comment d. `Willful or intentional misconduct and wanton misconduct are different concepts of wrongful or improper misconduct.' Bordonaro v. Senk. page 431 of 109 Conn., 147 A. 136, 137. `To constitute willful injury there must be design, purpose and intent to do wrong and inflict the injury; while to constitute wanton negligence the party doing the act or failing to act must be conscious of his conduct and, though having no intent to injure, must be conscious from his knowledge of surrounding circumstances and existing conditions that his conduct will naturally or probably result in injury.' 20 R.C.L. 21. In Menzie v. Kalmonowitz, 107 Conn. 197, 199,139 A. 698, 699, we defined wanton misconduct as `reckless misconduct, which is the equivalent of willful misconduct.' In Bordonaro v. Senk, supra, page 431 of 109 Conn., 147 A. 136, 137, we made it clear that by this language we `do not intend to characterize these terms as equivalents of each other, but as equivalent in result.'"
In Counts Two and Three the Plaintiff alleges essentially reckless and negligent sexual abuse by the Defendant. In Count Five the Plaintiff alleges negligent infliction of emotional distress. Since the court has found that Defendant's conduct was intentional, that same conduct cannot be found to have been reckless or negligent. Therefore judgment shall enter in favor of the Defendant on Counts Two, Three and Five of the Complaint.
Conclusion
The Plaintiff claims "fair, just and adequate damages in excess of Fifteen Thousand Dollars ($15,000.00) exclusive of interest and costs." The Plaintiff is indeed entitled to fair and reasonable compensation for the injuries she has suffered as a result of the Defendant's conduct.Campbell v. Gould, 194 Conn. 35, 39 (1984). The Plaintiff claims she has suffered numerous psychological problems as well as a loss of earning capacity. The Plaintiff has established that as a result of the Defendant's conduct she became depressed, fearful, and suffered low self esteem. Because of these conditions as well as her fear of the CT Page 14032 Defendant, she was unable to stay in school and dropped out. All these problems have effected her ability to hold a job. Although money can do little in the way of compensating the Plaintiff for the injuries the Defendant's outrageous conduct has caused her, the Court only has that as a remedy. Yet the Plaintiff has provided the court with little evidence on which to base a calculation of damages. Although it is obvious that the psychological trauma the Defendant's conduct has caused the Plaintiff is great, no medical expert testified as to the need or cost of any future treatment the Plaintiff may require. The most recent medical records submitted to the court are over two years old and no testimony was presented, other than her own, as to the Plaintiffs present psychological condition. In any event, the Plaintiff does not claim in her Complaint that she has in the past and will in the future incur medical expenses. The Plaintiff is allowed to recover only for those damages alleged in her Complaint. Medical expenses are special damages which must be specially pleaded in order for the Plaintiff to recover for them.Bombero v. Marchionne, 11 Conn. App. 485, 492-493, cert. denied,205 Conn. 801 (1987). In addition, there was no evidence as to the amount of any loss of future earning capacity or any evidence on which the court could base a reasonable estimate of such loss, even though the Plaintiff claimed in her Complaint a loss of earning capacity. "A party who seeks to recover damages . . . [on the ground of lost earnings or earning capacity] must establish a reasonable probability that his injury did bring about a loss of earnings, and must afford a basis for a reasonable estimate by the trier, court or jury, of the amount of that loss." (Internal quotation marks and citation omitted.) Daigle v. MetropolitanProperty Casualty Ins., 60 Conn. App. 465, 469 (2000). Therefore the court is left with little evidence on which to base an award of damages other than the mental pain and suffering that it is clear that the Plaintiff has suffered, and will continue to suffer, as a result of the Defendant's conduct.
The court orders that judgment shall enter in favor of the Plaintiff on Counts One and Four against the Defendant for $100,000.
 ___________________, J. Jane S. Scholl